## MIDLAND LINSEED PRODUCTS CO. v. CHARLES R. SARGENT CO.

## CHARLES R. SARGENT CO. v. MIDLAND LINSEED PRODUCTS CO.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1922.)

Nos. 3645, 3646.

1. Sales ⊜=82(1)—Exercise of contingent option by seller to demand cash payment held not to release buyer from contract.

Contracts for sale of linseed oil, to be shipped on orders of buyer and paid for within 10 days after shipment, with discount, or by 30-day trade acceptances, contained a provision that, "in case of default in·payment of any installment of purchase money when due, or in case the credit of the

buyer becomes unsatisfactory to the seller, the whole sum owing by the buyer shall become due at once and further deliveries shall be made only for cash." *Held*, that the obligation of the seller to deliver, and of the buyer to receive and pay for, the full quantity of oil named in the contracts, was absolute; that the provision quoted related to manner of payment only; and that a determination by seller, in good faith, that buyer's credit was impaired, and a requirement of payment for shipments in cash did not release buyer from such obligation.

2. Contracts ⬅153—Will not be construed as unilateral, unless language clearly requires it.

It is a canon of construction that courts will not destroy the mutual and reciprocal obligations of the contracting parties, and substitute therefor an optional contract, unless the language used imperatively requires such construction.

3. Sales ⬅181(1)—Option, on contingency to be determined by seller, must be shown to have been exercised in good faith.

Where a seller, on terms of credit, was given the right by the contract to demand payment in cash "in case the credit of the buyer becomes unsatisfactory to the seller," the burden rests on the seller to prove that it exercised such option in good faith and not arbitrarily.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action at law by the Midland Linseed Products Company against the Charles R. Sargent Company. From the judgment, both parties bring error. Reversed.

Ashley M. Van Duzer, of Cleveland, Ohio (Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, on the brief), for plaintiff.

J. A. Chamberlain, of Cleveland, Ohio (Stearns, Chamberlain & Royon, of Cleveland, Ohio, on the brief), for defendant.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. These two cases were heard and submitted together. The Midland Linseed Products Company brought an action in the District Court against the Charles R. Sargent Company for the recovery of damages for the breach of five separate contracts for the sale and delivery of specified quantities of pure linseed oil, and for a sixth cause of action averred that defendant was indebted to it in the sum of $806.76 upon an account for oil sold and delivered.

The defendant, for answer to plaintiff's first five causes of action, admitted that it had entered into the contracts described in the petition and denied any breach thereof on its part. For answer to the sixth cause of action it denied each and every statement therein contained. Defendant also filed a cross-petition, containing five separate causes of action based upon an alleged breach of each of these same contracts by the plaintiff. After the plaintiff had introduced these contracts in evidence, the trial court sustained a motion by the defendant to direct a verdict in its favor upon the first five causes of action set forth in plaintiff's petition, and also sustained a motion by the plaintiff to direct a verdict in its favor upon defendant's cross-petition.

No. 3645 is a proceeding in error to reverse the judgment of the trial court in directing a verdict for defendant upon plaintiff's first five caus-

es of action. No. 3646 is a cross-petition to reverse the judgment of the trial court directing a verdict in favor of plaintiff upon defendant's cross-petition. The five separate contracts sued upon are identical, except as to dates and quantities, and it will be sufficient to state the terms and conditions of the first of these contracts pertinent to the questions involved.

[1] The several provisions of this first contract, bearing date of January 29, 1920, that have application to the questions presented by the record, read as follows:

"The seller hereby sells and agrees to deliver, and the buyer hereby purchases and agrees to receive, 500 barrels, containing about 50 gallons each (7½ pounds in a gallon), of pure linseed oil, for shipment in quantities as follows: 500 barrels May, 1920, for shipment from seller's factory in car lots. Raw linseed oil at $1.61 per gallon, f. o. b. shipping station, freight allowed to Cleveland, Ohio. * * *

"Buyer to furnish specifications for shipment, in writing, to seller's office at Minneapolis, Minn., in ample time to enable the seller to execute order within the period or periods above mentioned. * * *

"Buyer agrees to pay invoices within 10 days from date of shipment, less a discount of 1 per cent., or to give a 30-day trade acceptance for the full amount of such invoices.

"In case of default in payment of any installment of purchase money when due, or in case the credit of the buyer becomes unsatisfactory to the seller, the whole sum owing by the buyer shall become due at once, and further deliveries shall be made only for cash."

In the first cause of action based upon this contract it is averred that—

"The plaintiff during the latter part of the month of May and the early part of the month of June, 1920, acting in good faith, and upon facts and circumstances arising subsequent to the making of such contract, became dissatisfied with defendant's financial condition, and defendant's credit so became unsatisfactory to plaintiff, and plaintiff so advised defendant, and finally, on or about June 9, 1920, plaintiff advised defendant that it would not ship or deliver any further oil under said contract, except for cash, and offered to ship the balance of the oil under this contract to defendant, or its order, upon payment for such being made in cash, and that on June 9, 1920, the defendant advised plaintiff that it would not accept from plaintiff any oil to be paid for in cash, and later notified plaintiff that its refusal so to do was final."

There is also a similar averment in each of the other four of the first five causes of action.

It is contended upon the part of the plaintiff that the provision of the contract authorizing it to demand cash upon delivery whenever it shall become dissatisfied with the buyer's credit is solely for the protection of the plaintiff, that its exercise of that right to demand cash does not release the buyer from its obligation to receive and pay for the quantity of oil named in the contract, and that its refusal to accept any further deliveries and pay cash therefor constituted a breach of this contract. It is the claim of the defendant that the election of the seller to demand cash upon delivery released the buyer from its unconditional contract obligation to accept delivery of this oil, and conferred upon the buyer the right to accept or refuse further delivery upon the terms of payment demanded by the seller. The sole question presented by this record is the construction of this provision of the contract.

This provision must, of course, be construed in harmony with the other terms and conditions of this contract. The basic fundamental provision covering the subject-matter of the contract, in plain, positive, and unambiguous language, required the seller to furnish and deliver to the buyer 500 barrels of pure linseed oil within the month of May, 1920, and required the seller to accept this quantity of oil and pay for it at $1.61 per gallon, less freight to Cleveland, Ohio. The contract in this respect is absolute and unconditional, and unless further provisions, in equally plain and unambiguous language, are found in this contract, modifying or qualifying the obligation of the parties hereto, then the plaintiff must, under its terms, sell and deliver, and the buyer must accept and pay the price named, and that, of course, would imply cash upon delivery, in the absence of a provision covering time and manner of payment.

There are, however, a number of provisions in this contract relieving the seller from this unconditional agreement on its part to deliver, if prevented from so doing by causes beyond its control; but there would seem to be nothing written therein releasing the buyer from his absolute obligation to accept and pay for the quantity of oil named in the contract. This, taken in connection with the fact that these contracts are on blank forms evidently very carefully prepared by the seller to protect its rights under practically every possible condition that might arise, would not only justify, but require, the application of the rule that a contract so prepared will be construed more strictly against the party to the contract preparing the same. Nevertheless the language used is so plain and unequivocal, and the relations of the several provisions of this contract to each other are so evident, that the application of this rule to the construction of this contract is not helpful to the buyer. There are also provisions in this contract with reference to the payment of the purchase price of this oil, and these provisions are found in the two other paragraphs of this contract above copied.

The first of these paragraphs provides that the seller may pay cash in 10 days, less 1 per cent. discount from the invoice price, or it may give 30-day trade acceptances for the full invoice price. This modifies the basic provision covering the subject-matter of the contract in respect to time and terms of payment only. It modifies in no respect whatever the absolute obligation of the seller to deliver and the buyer to accept the 500 barrels of oil named therein. This provision as to payment, however, is materially modified by the succeeding paragraph, which in no uncertain terms provides, in part, that, upon default in the payment of any installment of purchase money when due, the whole sum owing by the buyer shall become due and payable, and further deliveries shall be made only for cash. If this were all of this paragraph, it would hardly be contended that it could in any way affect any provision of this contract, other than the provision relating to payment. Certainly nothing is found in this provision as to terms of payment that would relieve the seller from delivering or the buyer from accepting the balance of this 500 barrels of oil not delivered at the time such default occurred.

It is equally clear that the further provisions of this paragraph that,

"in case the credit of the buyer becomes unsatisfactory to the seller, the whole sum owing by the buyer shall become due at once, and further delivery shall be made only for cash," does not, nor does it purport to, release or relieve either of the contracting parties from their respective obligations, the one to deliver, the other to accept, the full quantity of oil named in the contract. On the contrary, it relates solely and only to that provision of the contract in reference to time and manner of payment. This entire paragraph must be read as a modification of the provision relating to payment only. It is not subject to the construction that, upon the happening of one or both of the conditions named therein, either the seller will be released from its obligation to deliver or the buyer will be released from its contract obligation to accept the balance of the oil due on the contract, but may at its election demand or refuse further deliveries for cash.

[2] Such a construction would in effect make this a unilateral contract; that is to say, if its terms became burdensome to the buyer, it could default in payment of an installment due upon the purchase price, or impair its own credit, thereby forcing the seller to avail itself of this provision of the contract for its own protection. The buyer could then accept or reject further shipments for cash at will. It is a canon of construction that courts will not destroy the mutual and reciprocal obligations of the contracting parties, and substitute therefor an optional contract, unless the language used imperatively requires such construction.

It is further insisted upon the part of the buyer that these contracts involve the payment of such a large sum of money that the presumption naturally obtains that the buyer did not agree or intend to agree to pay all this money in cash. The contract does not require him to pay all of this money in cash, but only for each shipment as made upon specifications in writing by the buyer. Certainly the buyer contemplated the possibility of its being able to pay cash less 1 per cent. in 10 days for each of these separate shipments as they were received by it; otherwise, this provision would not have been in the contract. The provision that these shipments were to be made from time to time on specifications from the buyer also contemplated the buyer's needs for this commodity, and its ability to use or dispose of the quantity named in the contract, within the time limited, so that the proceeds of one shipment might be available to meet the purchase price of the next shipment. Payment in cash for each delivery, instead of the short term of credit, would seem not to have been particularly terrifying to the buyer. On the other hand, if any abnormal conditions should arise in the trade, so as to materially decrease or entirely stop the demand for this commodity, 30 days credit, while of some advantage, would hardly be sufficient to relieve the buyer from such a condition of the market.

Construing these two paragraphs of the contract relating to payment and to payment only, the conclusion necessarily follows that it was the purpose and intent of the contracting parties that the buyer should have the right and privilege to pay cash in 10 days, with discount of 1 per cent. from invoices, or give 30-day trade acceptance for the full invoice price upon two conditions: First, that the buyer should not default

in the payment of any installments due on the purchase price; second, that the credit of the buyer should continue to be satisfactory to the seller until the relative obligations of the parties to the contracts should be fully performed and discharged. If the buyer had defaulted in the payment of any installment of the purchase price when the same became due, it would hardly be contended that it could plead its own default as a release of its further contract obligations; yet this provision must be construed the same, regardless of whether further credit was refused by reason of such default or by reason of the fact that the credit of the buyer had become unsatisfactory to the seller, so that upon the happening of either of these conditions subject to which credit was extended to the buyer, the provision relating to such credit must fail, except, of course, the provision relating to discount, being based upon cash or substantially cash payment, will apply to a cash payment whether made voluntarily or otherwise.

For the reasons stated, the judgment of the District Court directing a verdict for the defendant upon the first five causes of action stated in the plaintiff's petition is reversed.

[3] This substantially disposes of the question presented by the cross-petition in error. Notwithstanding the contract provides that, in case the credit of the buyer becomes unsatisfactory to the seller, further deliveries will be only for cash, nevertheless this provision does not confer upon the seller authority to declare arbitrarily that the buyer's credit is unsatisfactory to it. It is averred in the petition that—

"Acting in good faith and upon facts and circumstances arising subsequent to the making of the said contract, plaintiff became dissatisfied with defendant's financial condition, and defendant's credit so became unsatisfactory to plaintiff."

This is denied in the answer, and therefore the burden is upon the plaintiff to establish the truth of this averment by a preponderance of the evidence. If the plaintiff fails to do this, then it cannot recover on either of its first five causes of action, and its refusal to make further deliveries, except only for cash, would be a breach of contract on its part, for which the defendant would be entitled to recover.

For the reasons stated, the judgment of the trial court directing a verdict for the plaintiff on the cross-petition is also reversed, and this cause is remanded for a new trial in accordance with this opinion.