## AMERICAN LOCOMOTIVE CO. v. CHEMICAL RESEARCH CORPORATION.

## AMERICAN LOCOMOTIVE CO. et al. v. GYRO PROCESS CO.

Nos. 10716, 10717.

United States Court of Appeals
Sixth Circuit.

Dec. 8, 1948.

Writ of Certiorari Denied Feb. 7, 1949.

See 69 S.Ct. 515.

Charles H. Tuttle, of New York City (Angell, Turner, Dyer & Meek, of Detroit, Mich., Charles H. Tuttle, C. Dickerman Williams and Tyler M. Bartow, all of New York City, on the brief), for appellants.

Howell Van Auken, of Detroit, Mich. (Howell Van Auken and Lawrence Rothenberg, both of Detroit, Mich., on the brief), for appellees.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

These are appeals from orders of the District Court denying petitions of the defendant-appellant, American Locomotive Company, for a stay of proceedings pending arbitration under the United States Arbitration Act, 9 U.S.C.A. § 3. The cases were consolidated for hearing by the District Court. There has been no trial on the merits.

Gyro Process Company (hereinafter called Gyro), the plaintiff-appellee in one of the cases, was the owner of a method for converting crude oil and other petroleum substances into motor fuel, chemicals and other products, involving patents, technical data and specialized knowledge. Chemical Research Corporation, plaintiff and appellee in the other action, is the majority stockholder in Gyro. Alco Products, Inc., (hereinafter called Alco), was a subsidiary of the defendant-appellant, American Locomotive Company. On June 16, 1932, Gyro and Alco entered into five contracts, the principal one of which constituted Alco exclusive agent for sale of licenses for use of the Gyro process, and also constituted Alco the exclusive engineering organization for the future development of the process for the purpose of keeping it abreast of the times. Subsequently Alco was dissolved and American Locomotive Company (hereinafter called Locomotive), assumed its obligations under the contract. The two suits involve the same question. As most of the proceedings took place in the Gyro suit, we will discuss that case in disposing of these appeals.

Disagreement between the contracting parties came to a head in 1938. On September 27, 1938, Locomotive wrote Gyro that on account of the repeated breaches by Gyro of the contract—"We take the position that the provisions of said contract are no longer binding upon this company and all obligations of this company thereunder are at an end," and that Locomotive proposed to hold Gyro responsible for all damages sustained by reason of the breach.

On August 30, 1940, Gyro commenced its present action in the Michigan State Court against Locomotive and several of its officers and representatives in which it sought damages in the amount of $5,250,000 for breach of the principal contract and its fiduciary obligations thereunder. On October 11, 1940, the defendants removed the case to the U. S. District Court on the ground of diversity of citizenship. On October 16, 1940, the defendants moved for a bill of particulars which was granted on December 2, 1940. Gyro then filed a motion for discovery to secure information needed to prepare for trial and to enable it to furnish a more definite statement to the defendants. This motion was granted on January 22, 1941 with proceedings to begin

on January 28, 1941. This date was later extended. On February 8, 1941, the defendants filed an answer and counterclaim which denied the material allegations of the complaint and set up six special defenses. The fourth of these special defenses stated that the contract of June 16, 1932 provided that if dissatisfaction should be expressed by Gyro with performance by Alco "the question as to whether the contract had been fairly and substantially performed by said Alco Products, Inc., should be heard and determined only by arbitration, as in said contract more specifically set forth; that no such arbitration has been had or demanded by said Gyro Process Company, plaintiff herein, and that plaintiff accordingly is not entitled to bring this action." The defendants did not at that time move for a stay of proceedings pending arbitration.

On February 28, 1941, Gyro filed a petition for stay of proceedings in order to complete its discovery and to enable it to reply to the defendants' answer and counterclaim. On March 17, 1941, the Court entered an order granting the petition of Gyro "for an order staying all proceedings in the above case except the taking of certain depositions and testimony on discovery, * * *" However, the District Judge stated at the time that he was not going to prevent either party from filing any motions or any pleadings that they wanted to file as he did not know what turn the case may take in their minds. On April 28, 1941, an order was entered directing the discovery and deposition to begin on May 6, 1941 in New York City.

Gyro filed an amended declaration on June 15, 1942 to which the defendants filed a motion to dismiss on June 26, 1942. Gyro filed a second amended declaration on September 30, 1943. On October 20, 1943, an order was entered, by stipulation of the parties, extending the time to answer to November 30, 1943. Thereafter 39 additional consent orders were entered extending the time to answer to May 26, 1947.

On February 25, 1946, Gyro moved for an order consolidating the hearings in the two cases. Although Locomotive insisted on separate trials, it did not base an objection on account of its claimed right to arbitrate. On March 1, 1946, the Court ordered the hearings consolidated and set for trial at Fall 1946 term of Court. At that time Locomotive objected to a trial date at the June term, but indicated its readiness to try at the Fall term. Delays in the discovery proceedings prevented a trial at that term.

In the meantime, the discovery proceedings were started in May 1941, but met objections from defendants, which required Court rulings and clarifying orders. They were adjourned after a few days and were not resumed until September 1946. Proceedings were held in September, October and December of 1946 and in March and November of 1947. On December 19, 1947, Gyro filed an amended and supplemental complaint in which it increased its claim for damages to $36,285,000. Defendants were given 60 days within which to file their response to this pleading, which time was later extended first to February 28th and again to March 22, 1948 on successive motions by defendants. On March 22, 1948, the defendant, Locomotive, moved for an order staying further proceedings until the disputes between the plaintiff and the defendants were submitted to arbitration as provided for in the contract and in accordance with the provisions of the United States Arbitration Act. At the same time, the defendants also filed a motion to dismiss the action for failure to state a claim and because of misjoinder of causes and parties, a motion to dismiss the action because the arbitration clauses constituted a bar, a motion to strike certain allegations in the amended and supplemental complaint, and a motion to make more definite certain allegations in the amended and supplemental complaint. On April 22, 1948, the District Judge denied Locomotive's petition for a stay, from which order the present appeal is taken.

In support of its motion for a stay pending arbitration, appellant relies upon Paragraphs 4 and 9 of the contract of June 16, 1932 and § 3 of the United States Arbitration Act, 9 U.S.C.A. § 3.

Paragraph 4 of the contract provides that all inventions constituting improvements or additions to the Gyro Process shall be the property of Gyro, and all patent applications made thereon assigned to Gyro, and—

"In case of a dispute between Gyro and Alco as to whether any invention made by Alco or its representatives or employees constitutes such an improvement or addition such dispute shall be settled by a board of arbitration selected as provided in paragraph 9 hereof."

Paragraph 9 of the contract provided as follows: "At any time after the expiration of three years from the date of this contract, if dissatisfaction shall be expressed by Gyro, Chemical Research Corporation, majority stockholder in Gyro, or Pure Oil Company, minority stockholder in Gyro, with the manner in which performance of this contract has been made by Alco, the question as to whether the contract has been fairly and substantially performed by Alco shall be heard and determined only in the following manner: The matter shall be submitted to a board of arbitrators consisting of three (3) members appointed as follows; * * * Said board shall make its report in writing to the parties within thirty (30) days after the conclusions of said hearings. If the arbitrators so appointed and/or a majority of them should determine that grounds for dissatisfaction with Alco exist, said arbitration board shall make a written report containing specific findings of facts upon which such conclusion is based, and containing, further, specific recommendations for the cure and remedying of such difficulties as may have been found to exist, and unless such recommendations are complied with by Alco within ninety (90) days after the report of the arbitration board, Gyro, Chemical Research Corporation, or Pure Oil Company, as the case may be, shall as an exclusive remedy have the right to terminate this agreement upon three (3) months written notice; provided, however, that as to any question as to the ownership of rights or patents or of malicious or wilful misconduct the parties hereto may· exercise their usual legal remedies. Any cancellation of this contract against Alco shall not deprive it of the percentage of royalties on all licenses made during the period of this contract."

Section 3 of the Arbitration Act provides as follows: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

■ The orders from which the appeals are taken are not final but are appealable interlocutory orders within the provisions of 28 U.S.C.A. §§ 225(b) and 227, recodified as of September 1, 1948 as 28 U.S.C.A. § 1292(1). Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876.

■ The arbitration provisions of the contract are not invalid on the ground of attempting to oust the courts of their jurisdiction. The District Court had jurisdiction of the proceedings, bringing them within the provisions of § 3 of the Arbitration Act. Compare Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876; Jackson v. Kentucky River Mills, D.C., 65 F.Supp. 601; Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582. Section 3 of the Act envisages action in a court on a cause of action and the agreement to arbitrate does not oust the court's jurisdiction of the action. The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 44, 64 S. Ct. 863, 88 L.Ed. 1117; Marine Transit Corp. v. Dreyfus, 2 Cir., 49 F.2d 215, 216, affirmed 284 U.S. 263, 277, 279, 52 S.Ct. 166, 76 L.Ed. 282; Murray Oil Products Co. v. Mitsui & Co., 2 Cir., 146 F.2d 381, 383. The action is merely stayed, not barred or dismissed. Shanferoke Co. v. Westchester Co., 293 U.S. 449, 452–453, 55 S.Ct. 313, 79 L.Ed. 583.

■ Appellee contends that notwithstanding the contract and statutory provisions referred to, appellant has no right to arbitration because (1) in terminating the contract in its entirety by its letter of September 27, 1938 it also cancelled the provisions thereof providing for arbitra-

tion, and (2) the present action involves the ownership of patents and is based upon the malicious or wilful misconduct of the appellant, which character of claims are specifically excepted from the questions made subject to arbitration by Paragraph 9 of the contract, and (3) although the question involved might be subject to arbitration after the cancellation of the contract by appellant, appellant by its conduct in the controversy, and by its delay in asking for a stay of proceedings, either waived or lost the right so provided.

Appellee relies upon the decision in The Atlanten, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586 in support of its contention that the cancellation of the contract also cancelled the arbitration provisions thereof. In that case the owner of a vessel repudiated his contract with the charterer before performance started. The Court relied upon that fact and the particular wording of the arbitration clause involved. Those features of the case and the fact that The Atlanten arose before the Arbitration Act was in effect are referred to by the Court of Appeals for the Second Circuit in In re Utility Oil Corp., 69 F.2d 524, certiorari denied 292 U.S. 655, 54 S.Ct. 866, 78 L.Ed. 1504, in which case that Court held that a party to a contract was not deprived of its right to rely on the arbitration provisions thereof by refusing to continue performance after breach by the other party thereto. This rule was approved in In re Pahlberg Petition, 2 Cir., 131 F.2d 968. See also Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978. We are of the opinion that the decision in The Atlanten is not applicable to the present controversy, and that appellant has not lost any arbitration rights provided by the contract by reason of its attempted cancellation of its obligations under the contract.

Nor do we agree with appellee's contention that the proviso clause in the last part of Paragraph 9 of the contract excludes from the arbitration provisions the type of controversy involved in this case. We do not construe that provision as excluding from arbitration a claim based on the alleged malicious or wilful misconduct of the appellant. The proviso appears more logically to refer to the remedy provided by Paragraph 9 of the contract, rather than to the subject matter of arbitration. Arbitration is merely a form of trial, not a "remedy." Murray Oil Products Co. v. Mitsui & Co., supra. Paragraph 9 provides that if the recommendations of the arbitrators are not complied with Gyro's exclusive remedy would be the right to terminate the agreement, which is immediately followed by the proviso that it can exercise the usual legal remedies when the ownership of rights or patents, or malicious or wilful misconduct is involved. The term "usual legal remedies" appears to be in contrast to the preceding term of "exclusive remedy." Such a construction also appears more consistent with the overall provisions of both Paragraph 4 and Paragraph 9. Paragraph 4 specifically provides for arbitration with respect to a dispute as to the ownership of a claimed improvement or addition to a patent. It would be inconsistent with this provision of the contract to construe Paragraph 9 as excluding such questions from arbitration. Nor is it reasonable to assume that Gyro was to be relieved of the arbitration provisions at its option by merely filing an action alleging malicious or wilful misconduct on the part of Locomotive. The contract provisions refer to factual situations rather than to mere allegations in a complaint. This Court said in Midland Linseed Products Co. v. Charles R. Sargent Co., 6 Cir., 281 F. 704, at page 708—"It is a canon of construction that courts will not destroy the mutual and reciprocal obligations of the contracting parties, and substitute therefor an optional contract, unless the language used imperatively requires such construction."

It is a reasonable construction of the agreement that in the absence of malicious or wilful misconduct in the performance of the contract the parties considered the right to terminate the contract a sufficient and satisfactory remedy, and accordingly made that remedy exclusive; but in the event the arbitrators found malicious or wilful misconduct on the part of Locomotive then Gyro would not be restricted to the remedy of merely terminating the agreement. Accordingly, at the present stage of the proceedings, before the report and findings of facts by the Arbitration Board, we are of

the opinion that the controversy falls within the arbitration provisions.

The right of arbitration, provided by contract, can be waived by the parties. Bringing suit for damages without relying on the arbitration provision, with defendant pleading to the merits would constitute such a waiver. La Nacional Platanera v. North American F. & S. S. Corp., 5 Cir., 84 F.2d 881, 882. In order to constitute a waiver there must be an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it. Watkins v. Fly, 5 Cir., 136 F.2d 578, 580; Bennecke v. Conn. Mut. Life Ins. Co., 105 U.S. 355, 359, 26 L.Ed. 990. Locomotive set up its contract right of arbitration by its original answer filed early in the proceedings. The District Judge stated in colloquy with counsel that in his opinion Locomotive continued "all the time" to plan to insist upon arbitration when a trial date was reached. Nevertheless, Locomotive invoked the jurisdiction of the Court by filing a counterclaim without asking for a stay of proceedings. We find it unnecessary to decide if such pleading constituted a technical waiver by Locomotive of its contract right of arbitration.

The right to a stay of proceedings under § 3 of the Arbitration Act presents a somewhat different question. The statute grants that right, provided the applicant "is not in default in proceeding with such arbitration." Although Locomotive pleaded its contract right of arbitration, it was pleaded as a bar to the action with no reference to the provisions of the Arbitration Act. Under the Act arbitration is not a bar, and in order to obtain the benefits of the provisions of § 3 thereof further action is necessary. Karno-Smith Co. v. School District, D.C., 44 F.Supp. 860, 862. In addition, Locomotive was asserting a counterclaim against Gyro. The question really presented is whether Locomotive was "in default" in not proceeding with the arbitration after filing its answer and counterclaim on February 8, 1941. No attempt to so proceed was made by it until it filed its motion for a stay on March 22, 1948, after a lapse of more than seven years. During that period there were many proceedings in the case, including pleadings, motions by Locomotive, numerous agreed orders, and expensive discovery proceedings, as set out in detail in the first part of this opinion. No objection had been made to the setting on March 1, 1946 of a trial date for the Fall term of 1946. A trial before a board of arbitrators may very easily present different problems and involve different methods of procedure and presentation of evidence than does a trial before a jury. It is no excuse to say that Gyro can use in an arbitration proceeding the evidence it discovered through the discovery proceedings. Gyro may have elected to handle the matter differently if the dispute was to be arbitrated.

Nor do we give much consideration to Locomotive's contention that the Court's order of March 17, 1941 prevented it from making the motion for a stay. It was clear from the statement of the District Judge at the time that appropriate motions would still be received and considered. Numerous motions were thereafter actually made and passed upon. In any event, the order staying proceedings *in this case* during discovery, is not reasonably susceptible of a construction that would bar a motion to stay all proceedings in the same case. Nor was it at all necessary for Locomotive to wait to make such a motion until the amended and supplemental complaint was filed. The general nature of the action was apparent upon the filing of the original complaint. It could easily determine then whether it wanted arbitration or a trial by jury.

In our opinion, the delay on appellant's part in moving for a stay was unreasonable and unexcusable under all the circumstances and constituted "default" on its part in proceeding with the arbitration. In doing so we give the word a broader meaning than is attributed to it in Kulukundis Shipping Co. v. Amtorg Trading Corp., supra, 126 F.2d at page 989. The extent and character of the delay herein involved is also materially different from that discussed in Almancenes Fernandez, S. A. v. Golodetz, 2 Cir., 148 F.2d 625, where it was said (page 628) "delay in moving for an arbitration order will *not alone* amount to a default within the proviso." (Emphasis added.) The case more closely approaches the

situations involved in La Nacional Platanera v. North American F. & S. S. Corp., supra and Radiator Specialty Co. v. Cannon Mills, 4 Cir., 97 F.2d 318, in each of which cases an application for a stay was denied. The decision, however, would seem to us to be one within the judgment of the trial judge rather than a matter of discretion, reversible only for abuse, as suggested by those decisions.

The orders appealed from are affirmed.