Petition of AMERICAN LOCOMOTIVE CO.

Civ. A. No. 7961.

United States District Court
E. D. Michigan, S. D.

Dec. 15, 1949.

Dyer, Angell, Meek & Batten, Detroit, Michigan (Charles H. Tuttle, New York City, C. Dickerman Williams, New York City, Theodore L. Harrison, New York City, Tyler M. Bartow, New York City, Walter M. Meek, Detroit, Mich., of counsel), attorneys for petitioner American Locomotive Co.

Howell Van Auken, Detroit, Michigan (Lawrence Rothenberg, Detroit, Michigan, of counsel), for respondents.

THORNTON, District Judge.

The within action involves an application, under Section 4 of the United States Arbitration Act of February 12, 1925, as amended, 9 U.S.C.A. § 4, for an order directing arbitration of the disputes that have arisen between the American Locomotive Company on the one hand and Gyro Process Company and Chemical Research Corporation on the other hand, in the manner provided for in Paragraphs 4 and 9 of a contract hereinafter more fully set forth.

Since it is felt that the factual background pertinent to the issues in the instant matter has been heretofore set forth in the American Locomotive Co. v. Chemical Research Corporation, 6 Cir., 171 F.2d, 115, we will draw upon that source for the following statement of facts:

Gyro Process Company (hereinafter called Gyro) was the owner of a method for converting crude oil and other petroleum substances into motor fuel, chemicals and other products, involving patents, technical data and specialized knowledge. Chemical Research Corporation is the majority stockholder in Gyro. Alco Products, Inc., (hereinafter called Alco), was a subsidiary of the defendant American Locomotive Company. On June 16, 1932, Gyro and Alco entered into five contracts, the principal one of which constituted Alco exclusive agent for sale of licenses for use of the Gyro process, and also constituted Alco the exclusive engineering organization for the future development of the process for the purpose of keeping it abreast of the times. Subsequently Alco was dissolved and American Locomotive Company (hereinafter called Locomotive), assumed its obligations under the contract. The two suits involve the same question. As most of the proceedings took place in the Gyro suit, we will discuss that case in disposing of this petition.

Disagreement between the contracting parties came to a head in 1938. On September 27, 1938, Locomotive wrote Gyro that on account of the repeated breaches by Gyro of the contract—"We take the position that the provisions of said contract are no longer binding upon this company and all obligations of this company thereunder are at an end," and that Locomotive proposed to hold Gyro responsible for all damages sustained by reason of the breach.

On August 30, 1940, Gyro commenced its present action, Civil Action No. 2165 in the Michigan State Court against Locomotive and several of its officers and representatives in which it sought damages in the amount of $5,250,000 for breach of the principal contract and its fiduciary obligations thereunder. On October 11, 1940, the defendants removed the case to the U. S. District Court on the ground of diversity of citizenship. On October 16, 1940, the defendants moved for a bill of particulars which was granted on December 2, 1940. Gyro then filed a motion for discovery to secure information needed to prepare for trial and to enable it to furnish a more definite statement to the defendants. This motion was granted on January 22, 1940 with proceedings to begin on January 28, 1941. This date was later extended. On February 8, 1941, the defendants filed

an answer and counterclaim which denied the material allegations of the complaint and set up six special defenses. The fourth of these special defenses stated that the contract of June 16, 1932 provided that if dissatisfaction should be expressed by Gyro with performance by Alco "the question as to whether the contract had been fairly and substantially performed by said Alco Products, Inc., should be heard and determined only by arbitration, as in said contract more specifically set forth; that no such arbitration has been had or demanded by said Gyro Process Company, plaintiff herein, and that plaintiff accordingly is not entitled to bring this action." The defendants did not at that time move for a stay of proceedings pending arbitration.

On February 28, 1941, Gyro, filed a petition for stay of proceedings in order to complete its discovery and to enable it to reply to the defendants' answer and counterclaim. On March 17, 1941, the Court entered an order granting the petition of Gyro "for an order staying all proceedings in the above case except the taking of certain depositions and testimony on discovery, * * *". However, the District Judge stated at the time that he was not going to prevent either party from filing any motions or any pleadings that they wanted to file as he did not know what turn the case may take in their minds. On April 28, 1941, an order was entered directing the discovery and deposition to begin on May 6, 1941 in New York City.

Gyro filed an amended declaration on June 15, 1942, to which the defendants filed a motion to dismiss on June 26, 1942. Gyro filed a second amended declaration on September 30, 1943. On October 20, 1943, an order was entered, by stipulation of the parties, extending the time to answer to November 30, 1943. Thereafter 39 additional consent orders were entered extending the time to answer to May 26, 1947.

On February 25, 1946, Gyro moved for an order consolidating the hearings in the two cases. Although Locomotive insisted on separate trials, it did not base an objection on account of its claimed right to arbitrate. On March 1, 1946, the Court ordered the hearings consolidated and set for trial at Fall 1946 term of Court. At that time Locomotive objected to a trial date at the June term, but indicated its readiness to try at the Fall term. Delays in the discovery proceedings prevented a trial at that term.

In the meantime, the discovery proceedings were started in May 1941, but met objections from defendants, which required Court rulings and clarifying orders. They were adjourned after a few days and were not resumed until September 1946. Proceedings were held in September, October and December of 1946 and in March and November of 1947. On December 19, 1947, Gyro filed an amended and supplemental complaint in which it increased its claim for damages to $36,285,000. Defendants were given 60 days within which to file their response to this pleading, which time was later extended first to February 28th and again to March 22, 1948 on successive motions by defendants. On March 22, 1948, the defendant, Locomotive, moved for an order staying further proceedings until the disputes between the plaintiff and the defendants were submitted to arbitration as provided for in the contract and in accordance with the provisions of the United States Arbitration Act, 9 U.S.C.A. §§ 1–15. At the same time, the defendants also filed a motion to dismiss the action for failure to state a claim and because of misjoinder of causes and parties, a motion to dismiss the action because the arbitration clauses constituted a bar, a motion to strike certain allegations in the amended and supplemental complaint, and a motion to make more definite certain allegations in the amended and supplemental complaint.

In support of its motion for a stay pending arbitration, Locomotive relied upon Paragraphs 4 and 9 of the contract of June 16, 1932 and § 3 of the United States Arbitration Act, 9 U.S.C.A. § 3.

Paragraph 4 of the contract provides that all inventions constituting improvements or additions to the Gyro Process shall be the property of Gyro, and all patent applications made thereon assigned to Gyro, and —"In case of a dispute between Gyro and Alco as to whether any invention made by Alco or its representatives or employees

constitutes such an improvement or addition such dispute shall be settled by a board of arbitration selected as provided in paragraph 9 hereof."

Paragraph 9 of the contract provided as follows: "At any time after the expiration of three years from the date of this contract, if dissatisfaction shall be expressed by Gyro, Chemical Research Corporation, majority stockholder in Gyro, or Pure Oil Company, minority stockholder in Gyro, with the manner in which performance of this contract has been made by Alco, the question as to whether the contract has been fairly and substantially performed by Alco shall be heard and determined only in the following manner: The matter shall be submitted to a board of arbitrators consisting of three (3) members appointed as follows; * * * Said board shall make its report in writing to the parties within thirty (30) days after the conclusions of said hearings. If the arbitrators so appointed and/or a majority of them should determine that grounds for dissatisfaction with Alco exist, said arbitration board shall make a written report containing specific findings of facts upon which such conclusion is based, and containing, further, specific recommendations for the cure and remedying of such difficulties as may have been found to exist, and unless such recommendations are complied with by Alco within ninety (90) days after the report of the arbitration board, Gyro, Chemical Research Corporation or Pure Oil Company, as the case may be, shall as an exclusive remedy have the right to terminate this agreement upon three (3) months written notice; provided, however, that as to any question as to the ownership of rights or patents or of malicious or wilful misconduct the parties hereto may exercise their usual legal remedies. Any cancellation of this contract against Alco shall not deprive it of the percentage of royalties on all licenses made during the period of this contract."

On April 22, 1948, District Judge Frank A. Picard denied Locomotive's petition for a stay under Section 3 of the United States Arbitration Act and from this order Locomotive appealed to the Court of Appeals for the Sixth Circuit. That Court affirmed the District Court stating in part as follows:

"In our opinion, the delay on appellant's part in moving for a stay was unreasonable and unexcusable under all the circumstances and constituted 'default' on its part in proceeding with the arbitration." American Locomotive Co. v. Chemical Research Corp., 6 Cir., 171 F.2d 115–121.

Whereupon Locomotive petitioned the Supreme Court of the United States for a Writ of Certiorari, but such petition was denied on February 7, 1949. 336 U.S. 909, 69 S.Ct. 515.

Thereafter the aforesaid application was submitted to this Court for an order directing arbitration under Section 4 of the United States Arbitration Act of February 12, 1925, as amended, and this application was opposed by Gyro on two major grounds, viz:

"1. The contract in controversy is not maritime and does not evidence a transaction involving commerce, and therefore is not subject to enforcement under Section 4 of the United States Arbitration Act.

"2. Assuming, but not conceding that the contract in controversy is enforceable under the Federal Arbitration Act, petitioner by reason of laches, default, estoppel, waiver and election otherwise, has lost all rights to have arbitration in specific performance of said contract."

As to the first point raised by Gyro, it is my opinion that the contract in controversy does evidence a transaction involving commerce such as to conform with the initial requirements of Section 4 of the United States Arbitration Act.

As to the second point, the pertinent parts of the provisions of Section 4 of the United States Arbitration Act are as follows:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in ad-

miralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * *" Title 9 U.S.C.A. § 4.

In August of 1940, Gyro commenced its present suit against Locomotive in which it sought damages in the amount of $5,250,000 for breach of the present contract and its fiduciary obligations thereunder. Such action appeals to this Court as being a definite expression of dissatisfaction on the part of Gyro to the extent that if Locomotive were interested in arbitration under the provisions of Sections 4 and 9 of the contract between the parties, this would have been the date, established by Gyro, that a right accrued to Locomotive to insist on the provisions of the arbitration clauses of the contract.

Whether or not Locomotive waived this right is the question presented for consideration here.

A definition of "waiver" which seems to meet with general approval is as follows:

"In order to constitute a waiver there must be an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." 171 F.2d 115, 121.

Since there must be an intentional relinquishment of a known right in order to constitute waiver, "intention" is defined as follows:

"'Intent' is a subjective fact seldom susceptible of proof by direct evidence, and ordinarily it must be ascertained by a consideration of the objective facts and the inferences fairly to be drawn therefrom." Serrer v. Cigarette Service Co., Ohio Com. Pl., 74 N.E.2d 841, 844.

Under date of February 8, 1941, Locomotive filed an answer and counterclaim which denied the material allegations of the complaint and set up six special defenses. The Fourth of these special defenses stated that the contract of June 16, 1932, provided that if dissatisfaction should be expressed by Gyro of performance by Alco

"the question as to whether the contract had been fairly and substantially performed by said Alco Products, Inc., should be heard and determined only by arbitration as in said contract more specifically set forth; that no such arbitration has been had or demanded by said Gyro Process Company, plaintiff herein, and that plaintiff accordingly is not entitled to bring this action." Locomotive did not at this time move for a stay of proceedings under Section 3 of the Arbitration Act.

The action of Gyro in commencing suit in the District Court was actual notice to Locomotive that Gyro was failing, neglecting and refusing to arbitrate under the provisions of Paragraphs 4 and 9 of the contract; and this procedure on the part of Gyro furnished Locomotive, under Section 4 of the Arbitration Act, with the weapons necessary to advance upon its presently avowed objective "arbitration"; but Locomotive did not place itself in the category of an aggrieved party and, as such, make application to the District Court under Section 4 of the Act, rather it employed the arbitration rights contained in Paragraphs 4 and 9 of the contract in an effort to bar Gyro's action and refrained from making application under Section 4 of the Arbitration Act until February 10, 1949. This neglect on the part of Locomotive to make application under Section 4 is intentional waiver in its fullest measure.

"In practice it is required of everyone to take advantage of his rights at a proper time; and neglecting to do so will be considered as a waiver." Bouvier's Law Dictionary, Unabridged, Rawle's Third Revision, p. 3417.

In arriving at the foregoing conclusion I am giving consideration to the proposition which has been persistently advanced by Locomotive that Locomotive's action in petitioning the District Court for a stay of proceedings under Section 3 of the Act was retarded by the conduct of Gyro in not filing its third and supplemental complaint until December 19, 1947, wherein it increased its claim for damages to $36,285,000; and because of this fact, Locomotive has contended that it could not petition for arbitra-

tion until such time as Gyro had finally and completely framed the issues, otherwise Locomotive would not know if the issues set forth by Gyro fell within the provisions of Paragraphs 4 and 9 of the contract.

Locomotive was given until March 22, 1948, to file a responsive pleading to the complaint filed by Gyro on December 19, 1947, and on March 22, 1948, Locomotive moved for an order staying further proceedings until the disputes between the plaintiff and the defendant were submitted to arbitration as provided for in the contract and in accordance with the provisions of the United States Arbitration Act. By taking this action I would ordinarily assume that Locomotive was satisfied that the issues set forth in the complaint filed by Gyro in December 1947 conformed with the arbitration clauses in the contract because up until this time Locomotive has claimed that it was without this knowledge; and yet, to completely destroy the proposed assumption on my part, I find on the same day that Locomotive filed its application for a stay of proceedings under Section 3 of the Arbitration Act, it filed other pleadings including a "Motion to Make Allegations More Certain", this pleading being sworn to by Walter M. Meek, one of the attorneys for Locomotive, wherein he states as follows:

"Walter M. Meek, of Detroit, Michigan, being duly sworn, deposes and says that he is agent and attorney for the defendants in this cause and that he makes this affidavit with their authority and on their behalf, and that he is familiar with the facts.

"Deponent further says that unless the allegations of the plaintiff's amended and supplemental complaint filed herein are made more definite and certain as requested in the attached motion, defendants and their counsel will not be sufficiently advised as to the nature of the claims which they will have to meet to enable them properly to plead or prepare for the defense of this cause."

This statement by Mr. Meek is of two fold significance; first, that Locomotive, by the very essence of Mr. Meek's claim in support of the foregoing motion, is not yet apprised of the issues being set up by Gyro and, therefore, to be consistent with its prior claim, is not yet ready to ask for a stay of proceedings; but Locomotive nevertheless applied for a stay of proceedings on March 22, 1948. This inconsistent position fails to convince this Court of the validity of Locomotive's present contention that it could not apply for arbitration because Gyro had not framed the issues until filing the supplemental complaint in December 1947. Secondly, Locomotive, speaking through its attorney and agent, requests the additional information in order to plead or prepare for the defense of this cause, and not for *arbitration*. The foregoing request is significant only to the extent that it illuminates the conduct of Locomotive in relation to its present claim that it was always insisting on arbitration.

Although the Court of Appeals for the Sixth Circuit has already spoken in relation to the application of Locomotive for a stay of proceedings under Section 3 of the Arbitration Act, I find it necessary to analyze the conduct of Locomotive regarding that particular application in an effort to arrive at whether or not Locomotive is guilty of intentional abandonment of its rights to arbitration in delaying its petition for arbitration under Section 3 of the Act. I recognize the holding in the Pahlberg case, (In re Pahlberg Petition), 2 Cir., 131 F.2d 968, with which I am in accord, that the denial of an application for a stay of proceedings under Section 3 does not preclude an application under Section 4, and the fact of the denial itself has been given no consideration by this Court in arriving at its determination of this matter.

As heretofore stated, Locomotive has claimed that it was precluded from petitioning the District Court for a stay of proceedings under Section 3 until the issues were framed by the plaintiff Gyro and that this did not take place until December 19, 1947. Section 3 of the Arbitration Act provides as follows:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an

agreement in writing for such arbitration, *the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." (Italics supplied.)

and thus we find that the function of being satisfied that the issue involved in the suit or proceeding was one referable to arbitration under the agreement was for the Court, and not for the attorneys for the defendant, and if Locomotive was sincerely interested in arbitration and not in delay, it could have submitted the issues to the District Court for judicial determination in 1940 rather than in 1948. Since Judge Picard, of the District Court, on April 22, 1948, denied Locomotive's petition for a stay because Locomotive was in default, the first judicial determination of whether or not the issues involved in this suit were referable to arbitration under the contract was made by the Court of Appeals for the Sixth Circuit in the appeal proceedings wherein Judge Miller speaking for the Court states as follows:

"Nor was it at all necessary for Locomotive to wait to make such a motion until the amended and supplemental complaint was filed. The general nature of the action was apparent upon the filing of the original complaint. It could easily determine *then* whether it wanted arbitration or a trial by jury." 171 F.2d 115, 121. (Italics supplied.)

In my opinion I have the right to, and do, draw the inference from the foregoing findings made by Judge Miller that if the same matter had been submitted to Judge Picard of the District Court in 1940, Judge Picard would have made the same judicial determination, and the conduct of Locomotive in not submitting the matter to the District Court for a determination under Section 3 of the Act, coupled with its conduct in not applying under Section 4 of the Act, clearly demonstrates to me

that Locomotive was not interested in submitting the controversy to arbitration, but was directing its activities away from that objective and, therefore, was intentionally relinquishing its contract rights to arbitration to an extent that constituted waiver.

"Under the Act arbitration is not a bar, and in order to obtain the benefits of * * * § 3 thereof further action is necessary." 6 Cir., 171 F.2d 115–121.

In arriving at the intent of Locomotive, the following portion of Locomotive's answer to Gyro's original complaint filed by Locomotive on February 8, 1941, is informative: "Wherefore, these defendants demand that the complaint herein be dismissed with costs and disbursements to these defendants, and defendant, American Locomotive Company, being advised that it is entitled to affirmative relief therefore files this 'counterclaim' ", and thereafter sets forth a counterclaim asking for substantial damages from Gyro.

From the foregoing it is impossible to attribute to Locomotive any desire to arbitrate the issues, or any intention on the part of Locomotive to request that the matter be submitted to arbitration, despite the fact that in its Fourth Defense of the said answer Locomotive sets out the arbitration clause of the contract as a bar to Gyro's action; however, said allegation does establish that Locomotive had knowledge of the existence of its right to arbitration.

In a motion for deposition and discovery filed by Locomotive on May 27, 1942, the first paragraph reads as follows:

"1. Allowing said defendants to take the deposition or depositions of Gyro Process Company, by Harold H. Emmons and Alex Groesbeck and the duly authorized representatives or agents of said Gyro Process Company, upon oral examination regarding any matter not privileged *which is relevant to the subject matter involved in this pending action* whether relating to the claim or defense of said defendants or to the claim or defense of the plaintiff therein, including the existence, descrip-

tion, nature, custody, condition and location of any books, documents, or other tangible things, identity or location of persons having knowledge of relevant facts, such depositions to be held at a time and place to be determined in the order entered upon this motion, and * * *".

The foregoing representation by Locomotive is a clear and definite activity on its part towards a trial of the issues in the District Court.

In the affidavit in support of the foregoing motion for deposition and discovery, Mr. George Barker describes himself as follows: "1. That he is and for upwards of ten years has been associated with the firm of Hardy, Stancliffe & Hardy, of counsel for the defendants in the above entitled action, and is familiar with the matters hereinafter set forth", whereinafter he certifies in part as follows:

"Defendants desire an examination at this time of the plaintiff by its President, Alex Groesbeck, and by its Secretary and Treasurer, Harold H. Emmons, regarding any matter not privileged which is relevant to the subject matter involved in this pending action, whether relating to the claim or defense of said defendants or to the claim or defense of the plaintiff therein. This examination is material and is necessary to the defendants for the purpose of discovery or for use as evidence in the action or for both purposes. The production of the documents, papers, books, accounts, letters, etc., designated in the annexed notice of motion, is necessary and material on behalf of the defendants as such books will show (among other things) the licenses entered into by said Gyro (and its predecessor in interest, and the amount of royalties received therefor and enable the defendant to prove the damages to which defendant American Locomotive Company is entitled under its counterclaim. The examination and the discovery also will aid the defendants in the defense of the purported claim set forth in the declaration."

The foregoing statement by Locomotive, through one of its attorneys who is familiar with the facts, indicates that the defendant has adopted a course of procedure which is completely foreign to arbitration.

On February 28, 1946, *about five and one-half years after the action had been commenced in the District Court,* a hearing was had on plaintiff's motion for consolidation of Civil Actions 2165 and 2047 and to fix a date in the June 1946 term of the District Court for the trial of the consolidated actions. At the time of this hearing the defendant's attorney Walter M. Meek applied to the Court to set the trial of Civil Action 2047 to precede the trial of Civil Action 2165 and to fix the trial date in the fall term of 1946 rather than the June term, and in support of this request Mr. Meek stated to the Court as follows:

"Mr. Meek: I talked to my people Wednesday and told them what the situation was. The advised me they would be willing to consent to the case going over to the fall term rather than the June. They said they couldn't conveniently come out here and try it in the June term, but would consent to its going over to the fall term, if that was desired by the court and plaintiff, on condition that the cases should remain in their same status and be tried separately, as they would be under the present arrangement, with the Chemical Research case coming on first. I am authorized to consent to the plaintiffs' request for adjournment on these conditions."

* * * * * *

"Mr. Van Auken: Mr. Meek told me the other day he couldn't be ready before fall.

"Mr. Meek: I did not say that at all. I said my people couldn't come out here and try it in June. I told you we would be ready March 19th." (Pgs. 337–338 Supreme Court Transcript.)

At the termination of the argument on the motion for consolidation and setting the matters for trial, and on March 1, 1946, Judge Picard entered the following order:

"Ordered that the hearing of this case be consolidated with the hearing of Chemical Research Corporation, a Delaware corporation vs. American Locomotive Company, a New York corporation, Civil Action No. 2047 in this court, and that the

same be heard, set and tried together at the Fall, 1946 term of this court.

"(OK as to form Angell, Turner, Dyer & Meek—Attys. for Def.) (Signature) Frank A. Picard

"United States District Judge"

The foregoing definite arrangement for a trial, at a time certain, of the actions pending in the District Court is a clear cut demonstration of a position inconsistent with any desire on the part of Locomotive for arbitration.

In commenting on the contention of Locomotive in relation to the foregoing excerpt, the Court of Appeals for the Sixth Circuit stated:

"On March 1, 1946, the Court ordered the hearings consolidated and set for trial at Fall 1946 term of Court. At that time Locomotive objected to a trial date at the June term, but indicated its readiness to try at the Fall term.

    \*    \*    \*    \*    \*    \*

"No objection had been made to the setting on March 1, 1946 of a trial date for the Fall term of 1946." 171 F.2d 118–121.

As heretofore mentioned and on March 22, 1948, Locomotive filed a petition for stay of proceedings under Section 3 of the Arbitration Act and a hearing was had on this petition on April 2, 1948, wherein the following colloquy took place between Judge Picard and counsel for the respective parties:

"Mr. Meek: We have now filed in this case certain motions in answer to the supplemental and third amended complaint that the plaintiffs have filed. And among our pleadings is a motion filed in the Gyro case, and also in the Chemical case, in which we ask the court to enter a stay of proceedings in these two matters under the United States Federal Arbitration Statute. Now, we have filed other motions, but for obvious reasons that is the only one that I have noticed for hearing, and I noticed that for hearing on the 5th. The New York counsel of the American Locomotive wants to be here for that motion.

"The Court: What is this motion?

"Mr. Meek: We set it up as a special defense to the first complaint that they filed, and now they have filed what we understand is, I guess, the last of their complaints, and that has been one of our defenses all the way through.

"The Court: Why haven't you had arbitration in the meantime?

"Mr. Meek: I don't know. You will have to ask plaintiffs.

"Mr. Van Auken: Of course this arbitration clause is applicable to only a very limited issue, but they could have had arbitration any time they asked for it, if they had been entitled to it.

"The Court: Aren't they entitled to it?

"Mr. Van Auken: No, they are not entitled to it.

"Mr. Meek: That is what we will have to argue out when this motion comes in.

    \*    \*    \*    \*    \*    \*

"The Court: The point with me is why you have waited so long, and now come in with something I have never heard about.

"Mr. Meek: I don't know why they waited.

"The Court: Aren't you the ones that set up arbitration as a defense?

"Mr. Meek: We set up arbitration as a defense, as a condition precedent to this suit. Now, I have noticed that motion for hearing. We are not asking for it this morning.

"The Court: Here we are with a case that has been on the docket almost eight years, and the first thing I know you want to arbitrate it. I wish you had arbitrated it eight years ago.

"Mr. Meek: That is all right. That is when we raised the point.

"The Court: I don't know as you can wait eight years.

"Mr. Meek: Isn't that one of the things you will have to decide when you hear the motion for the stay. We are not here asking for a stay this morning. What we are here for is this, if I may state it this way: I have noticed that for hearing April 5th. That is next Monday. I don't know this is anything your Honor is going to want to

take up on your regular motion day because I imagine it may take quite a long time. We are perfectly willing to do it when your Honor wants to put it on.

"The Court: I will put it on Monday.

Now, gentlemen, I am not going to let this case be delayed any more, if it is possible for me not to delay it.

Now, I have noticed that motion for hearing. We are If it is a matter of discretion with the court, there will be no arbitration now. If it isn't a matter of discretion, that is something else. This is the first I have heard of arbitration. * * *

"Mr. Meek: I don't mean it has been called to your Honor's attention."

* * * * * *

From an analysis of the foregoing colloquy between the Court and counsel for Locomotive on an occasion when the action had been pending almost eight years, and wherein the Court states that this is the first occasion when he has heard of arbitration, and counsel for Locomotive admits that the matter of arbitration had not been called to the Court's attention up until that time, it is impossible for this Court to perceive, from the conduct of Locomotive over this eight-year period, any indication of an expressed desire for arbitration, but rather it is confronted with an extended period of years completely barren of any action towards that objective.

"Under the Act arbitration is not a bar, and in order to obtain the benefits of § 3 thereof further action is necessary." 6 Cir., 171 F.2d 115–121.

The necessity of further action to derive any benefit under Section 3 of the Act applies with equal force to any benefits sought under Section 4 of the same Act, then again—

"In practice it is required of everyone to take advantage of his rights at a proper time; and neglecting to do so will be considered as a waiver." Bouvier's Law Dictionary, Unabridged, Rawle's Third Revision, p. 3417.

■ I do not find that the filing of its answer setting forth the affirmative defense of the arbitration provisions contained in the contract of June 16, 1932, and the filing of a counterclaim asking for substantial damages, in and of itself, established the intention on the part of Locomotive to waive its contract right of arbitration. However, the filing of an answer, the interposition of a counterclaim and the plea of arbitration as an affirmative defense, in conjunction with a course of conduct over a substantial number of years wherein Locomotive took no action in an effort to bring about arbitration, but, on the contrary, actively participated in a law suit as a defendant anticipating court trial of the issues, in my opinion spells out an intentional relinquishment of its known right to arbitrate.

"The right of arbitration, provided by contract, can be waived by the parties." 6 Cir., 171 F.2d 121.

From the four corners of a voluminous record I am led to the inescapable conclusion that the petitioner waived its contract right of arbitration.

The petition is denied and an order may be so entered.