## JACKSON v. KENTUCKY RIVER MILLS.

### No. 48.

District Court, E. D. Kentucky.

May 3, 1946.

James Park and Stoll, Muir, Townsend, Park & Mohney, all of Lexington, Ky., for plaintiff.

Leslie W. Morris, of Frankfort, Ky., Eldon S. Dummit, of Lexington Ky., and Smith & Leary, of Frankfort, Ky., for defendant.

FORD, District Judge.

This case is submitted upon the defendant's motion to dismiss the complaint by which the plaintiff, a citizen of New York, invoking the constitutional mandate that full faith and credit shall be given in each state to the judicial proceedings of every other state (U.S. Const. Art. IV, sec. 1), seeks to enforce against defendant, a corporate citizen of Kentucky, a personal judgment for $14,712.56 rendered by the Supreme Court of the County and State of New York in favor of certain individuals doing business as partners under the firm name of Smith & Bird, who assigned the judgment to the plaintiff.

It appears from the complaint and its accompanying exhibits that a written contract was made in Kentucky on April 20, 1944, by the terms of which the plaintiff's assignors, Smith & Bird, sold to the defendant 95 tons of Brazilian Government Graded Caroa fibre at the price of 18 cents per pound. The contract provided for the delivery of the fibre to a United States Atlantic port and for its transportation thence by rail to Frankfort, Kentucky.

Seventy-nine (79) tons of the fibre were shipped to Kentucky, but the defendant refused to accept delivery claiming that the shipment was not made within a reasonable time and that the fibre was not as it had been represented.

The contract of sale contained the following provision:

"Arbitration. Any dispute arising out of this contract or its interpretation shall be settled by arbitration in New York in the customary manner, buyer and seller each naming his arbitrator, whose award, or that of the umpire whom the arbitrators may appoint, shall be final and binding upon both parties. If either party fails to appoint an arbitrator within seven (7) days after receiving the other party's nomination of an arbitrator, the one arbitrator nominated may act as sole arbitrator. In case of alleged inferiority the arbitrators' and umpire's fees are to be paid by the seller if the fibre is allowanced more than the amount which the seller may have offered the buyer in settlement; otherwise the fees are to be paid by the buyer. The seller and buyer consent that the arbitration shall be enforceable under and pursuant to the laws of the State, Country or Government having jurisdiction and that judgment upon the award may be entered in any court of any such jurisdiction."

Upon the refusal of defendant to accept delivery of the fibre, Smith & Bird demanded arbitration of the controversy and by registered mail notified defendant of the demand and of their appointment of an arbitrator. By the same communication they requested the defendant to appoint an arbitrator in order that arbitration of the controversy might proceed in accordance with the agreement.

The defendant failed to appoint an arbitrator and entirely ignored the demand for arbitration. After giving notice to the parties by mail, the arbitrator nominated by Smith & Bird, at a hearing held at his office at 70 Pine Street, New York City, on December 19, 1944, at which the defendant was neither present nor represented, awarded Smith & Bird damages against the defendant in the sum of $14,174.59 together with interest and costs. Smith & Bird then instituted a proceeding in the Supreme Court of New York County, New York, for confirmation of the award of the arbitrator and for judgment for the amount of the award and costs. An order was made by the Court calling upon the defendant to show cause before the Supreme Court of the County of New York at the County Court House, Foley Square, in the City of New York on the 25th day of January, 1945, why judgment should not be entered accordingly. By registered mail the order was delivered to defendant at Frank-

fort, Kentucky. The defendant did not appear and made no response whatever to the show cause order. On January 31, 1945, the Court entered the judgment which is sought to be enforced in this action.

The grounds upon which the defendant bases its motion to dismiss are:

1. The contract upon which the judgment was based having been made in the State of Kentucky, in respect to validity and enforcibility it is governed by the law of Kentucky under which the arbitration clause contained therein is unenforceable;

2. The Court of New York by which the judgment was rendered was without jurisdiction of the subject matter or the parties and no provision of the contract express or implied, vested that court with jurisdiction to enter the judgment.

On February 12, 1925, Congress enacted "The United States Arbitration Act." Sec-2 of the Act provides: "A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2.

■ The contract here exhibited evidences a transaction involving "commerce" which, as defined by the Act, "means commerce among the several States or with foreign nations." 9 U.S.C.A. § 1. The plenary power to regulate such commerce is committed to Congress by section 8, clause 3 of Article I of the Constitution of the United States.

■ Thus, legislating within its constitutional domain, Congress has declared, as a matter of substantive law, that an arbitration agreement such as that here in question, is valid and enforceable. Donahue v. Subsequchanna Collieries Co., 3 Cir., 138 F.2d 3, 5, 149 A.L.R. 271.

■ The power of Congress to regulate such commerce by National laws is paramount and the conflicting laws of a state can not stand in the way of enforcement. "If it were otherwise, the government and its laws might be prostrated at the feet of local authority." Northern Securities Co. v. United States, 193 U.S. 197, 333, 24 S.Ct. 436, 455, 48 L.Ed. 679. The contention of the plaintiff, therefore, that the validity and enforcibility of this arbitration agreement is governed by the law of Kentucky seems clearly untenable. The opinion of the United States Circuit Court of Appeals of the Sixth Circuit in Gatliff Coal Co. v. Cox, 142 F.2d 876, upon which defendant relies, is not apposite. In that case the arbitration agreement relates to a contract of employment of coal miners engaged as workers in interstate commerce and the Court held that the United States Arbitration Act was not applicable to such an agreement by reason of the provision of the first section thereof that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C.A. § 1.

■ Moreover, if the New York Court which rendered the judgment had jurisdiction of the parties and the subject matter, full faith and credit could not be denied merely on the ground that mistakes of law may underlie the judgment, for the judgment of a court of competent jurisdiction is "conclusive as to all the media concludendi" against collateral attack. Fauntleroy v. Lum, 210 U.S. 230, 237, 28 S.Ct. 641, 52 L.Ed. 1039; Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357.

■ It is a familiar rule, however, that where a judgment rendered by a court of one state is sought to be enforced in another, the validity of the judgment may be challenged for want of jurisdiction over either the person of the defendant or the subject matter of the litigation and want of jurisdiction in either respect is open to inquiry. Milliken v. Meyer, supra; Grover & Baker Sewing Machine Co. v. Radcliffe, 137 U.S. 287, 11 S.Ct. 92, 34 L.Ed. 670; Adam v. Saenger, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649. To require a Court, State or Federal, to give full faith and credit to a personal judgment rendered

by a Court of another State, it must appear from the record that the defendant was then domiciled in the other State; or had been brought within the jurisdiction of the Court by personal service of process in the State; or had voluntarily entered his appearance before the Court; or that he had in some manner consented to subject himself to such jurisdiction. "The several states are of equal dignity and authority, and the independence of one implies the exclusion of power from all others." Brown v. Fletcher's Estate, 210 U.S. 82, 89, 28 S.Ct. 702, 704, 52 L.Ed. 966. "Except as jurisdiction attaches, the rule laid down by Mr. Justice Story in his Conflict of Laws, § 539, has been supposed to be of universal acceptance. 'No sovereignty can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such persons or property in any other tribunals.'" Baskin v. Montedonico, 6 Cir., 115 F.2d 837, 838. See, Restatement, Conflict of Laws, § 77, page 115.

The fact that in regulating the procedure of Federal Courts "Congress could provide for service of process anywhere in the United States," Mississippi Publishing Corp. v. Murphree, 66 S.Ct. 242, 245, as it has done in prescribing the procedure for the service of process in cases where the jurisdiction of the Courts of the United States is invoked for the enforcement of the remedial provisions of the United States Arbitration Act, § 9, 9 U.S.C.A. § 9, does not alter the limitation upon the power of the States in that respect.

■ In the light of these general principles, we turn to the consideration of the question whether the Supreme Court of New York County, New York, had jurisdiction to enter personal judgment against the defendant. It appears upon the face of the complaint and the exhibits that the defendant is not domiciled within the State of New York and that it has not been brought within the jurisdiction of the Court of New York by personal service of process within that State nor by voluntary appearance. It is also clear from the record that defendant has not entered the State of New York in such a manner as to subject itself to the jurisdiction of the Courts of that State by acts analogous to those upon which consent to submit to jurisdiction was implied in cases involving use of state highways or business activities. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, and Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926. It appears to be a generally accepted rule, however, that a corporation as well as an individual may validly consent in advance to submit itself to the jurisdiction of the Courts of a State where it is neither present nor domiciled. Restatement, Conflict of Laws, §§ 81, 90. The crucial question in this case seems to be whether the defendant expressly or by implication consented to the jurisdiction of the New York Court to render the judgment in question.

■ The plaintiff insists that the provision of the arbitration agreement that "Any dispute arising out of this contract or its interpretation shall be settled by arbitration in New York in the customary manner" necessarily implies consent of the parties that they will submit themselves to the jurisdiction of the Courts of New York to render judgment upon the award and consequently the show cause order served on the defendant in Kentucky satisfied due process requirements and was effective to bring the defendant before the New York Court and bind it by the judgment. The principal authorities relied upon by the plaintiff to support this contention are: Mulcahy v. Whitehill, D.C. Mass., 48 F.Supp. 917; and Gilbert v. Burnstine, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453. It is noticed that in these cases the arbitration agreements were materially different from the agreement here exhibited. In the Mulcahy case, the agreement provided for arbitration in New York "by the American Arbitration Association." The rules of the Association, by which the parties consented to be governed, provided that each party "shall be deemed to have consented to service by mail or by personal service, within or without the state, of all process necessary for such arbitration or

for the conformation of an award and entry of judgment on an award." D.C., 48 F. Supp. 917, 919. In the Gilbert v. Burnstine case, supra, the arbitration agreement provided that all differences arising under the contract should be arbitrated at London "pursuant to the Arbitration Law of Great Britain."

The arbitration clause of the contract here exhibited is of an entirely different pattern. After designating "New York" as the place for the arbitration proceeding, it further provides: "The seller and buyer consent that the arbitration shall be enforceable under and pursuant to the laws of the State, Country or Government having jurisdiction and that judgment upon the award may be entered in any court of any such jurisdiction." This provision seems to clearly negative the idea that the parties intended to personally submit themselves to the jurisdiction of any court other than one "having jurisdiction", according to law. It evidences the fact that the parties treated judicial proceedings for judgment upon an award as an entirely different matter from the arbitration proceedings as such.

The contract exhibited with the complaint shows that the provision relating to judgment upon the arbitration award is a part of the printed form at the top of which is also printed the firm name "Smith & Bird, 82 Beaver Street, New York." In the printed form a blank space is left for the insertion of the place of arbitration. In this particular contract the words "New York" are typed in this blank space, but of course this might vary by agreement of the parties with each particular contract using this printed form. It is not unreasonable to infer from these facts that the draftsman of the printed portion of the contract was familiar with Gilbert v. Burnstine, supra, and Mulcahy v. Whitehill, supra, and carefully formulated this provision to preclude any implication that by designating a particular place of arbitration the parties intended thereby to personally submit themselves to the jurisdiction of the courts of the place so designated, such as was found implicit in the contracts involved in the cases above mentioned. Obviously the printed form was prepared at the instance of Smith & Bird, and in case it should be found necessary or advisable to designate a place of arbitration located in some state other than New York, it was important to them that they be protected against implication of consent to personal jurisdiction in a court of a distant State. Unless this provision means that the parties intended jurisdiction of judicial proceedings arising from the arbitration to be in accordance with the general law governing personal jurisdiction of litigants rather than according to "the customary manner" of procedure prevailing at the place of arbitration, it seems entirely superfluous.

I am of the opinion that the New York Court, which rendered the judgment here sought to be enforced, did not have jurisdiction of the person of the defendant and the judgment is a nullity. The defendant's motion to dismiss the complaint should be sustained. An order will be entered accordingly.