## Guerry et al. v. Ponnock et al.

*Thomas D. McBride* and *Michael von Moschzisker*, for plaintiff.

*William Buchanan Gold, Jr.*, for defendants.

CRUMLISH, J., June 7, 1951.—The above matter is before us on defendant's petition and rule to show cause why the judgment should not be stricken off for want of jurisdiction.

On April 25, 1947, the parties to the above-entitled action entered into an arbitration agreement, provid-

ing that "such matters as shall be in disagreement . . . shall be submitted to arbitration for final determination". The agreement was that one arbitrator be appointed by Robert Guerry and the second by Abraham Ponnock. The third arbitrator, who was to act as umpire, was to be appointed by the attorneys for both parties. The agreement stated:

". . . the parties hereto agree, in the event of submission to arbitration, to abide by the decision and award of the arbitrators and that such decision or award as may be arrived at, *may be entered upon the record by the Clerk or Prothonotary of any Court as a judgment, and the party against whom such decision or award is rendered does hereby authorize and empower the Clerk or Prothonotary of any Court to enter judgment against said party and/or for the sum of such award with costs of suit*, and the parties hereto specifically waive the oath of arbitration and all other legal provisions as to form. . . . The final determination of the arbitrators shall be reduced to writing and a copy thereof signed by the arbitrators shall be delivered to all parties hereto, and the decision of said arbitrators shall be *final, binding and conclusive to all of the parties hereto, without right of appeal therefrom*." (Italics supplied.)

Pursuant to the agreement, the three arbitrators who were appointed held nine meetings during 1949. The arbitrator appointed by Robert H. Guerry disapproved the report and award prepared by the umpire and resigned on May 5, 1950. When the attorney for the Robert H. Guerry interests learned of the resignation, he requested that the remaining arbitrators hold a meeting with the attorneys for both parties. In their written "Final Determination", dated May 18, 1950, the two remaining arbitrators state:

". . . it must be first determined whether the vacancy created by the resignation of (one of the arbi-

trators) could and should be filled. After consideration of the facts and applicable law" the remaining arbitrator and the umpire concluded "that there is nothing, either in the agreement giving rise to the arbitration or in the law, which permits the filling of a vacancy in the absence of an agreement between the parties . . ." The two remaining arbitrators then concluded that they had the power to make the final determination contemplated by the agreement, and awarded $16,439.83 to Abraham Ponnock.

On January 10, 1951, the attorney for plaintiff, Abraham Ponnock, filed the præcipe for entry of judgment against Robert H. Guerry for $18,665.73 (the amount of the award, plus one half of the fees of the arbitrators and the cost of the notes of testimony). Attached to the præcipe was the report of the arbitrators, signed by the two concurring arbitrators, the award, and the original memorandum of the arbitration agreement, signed by the parties thereto. Judgment was entered pursuant thereto by the prothonotary.

On January 19, 1951, the attorney for Robert H. Guerry appeared de bene esse and was granted a rule to show cause why judgment should not be stricken off for want of jurisdiction.

The petition alleges:

"Your petitioner is informed, believes, and therefore avers that said entry of judgment was fatally defective because it affirmatively appears from the record that Your Honorable Court lacked jurisdiction to permit entry of judgment against Robert H. Guerry . . . since his residence is therein set forth as being Elkton, Cecil County, Maryland, and there is nowhere present on the record a showing that despite the said nonresidence of Robert H. Guerry he was properly subjected to the jurisdiction of Your Honorable Court

through due service of process and notice or entry of appearance on his behalf."

Defendant in his petition says that the præcipe is grounded upon "an alleged 'Award' and 'Authorization and Power' ". In his brief petitioner inferentially objects to the fact that only two of the arbitrators signed the award. We shall make this objection our first consideration.

In Sukonik v. Shapiro, 333 Pa. 289 (1939), it was said:

"The general rule of the common law . . . is that all the arbitrators must concur therein. . . . The reason for requiring unanimity is that the power given to the arbitrators is joint, and they all must unite, therefore, in its execution. But, even at common law, if the parties in their reference manifest an intent to be bound by a majority of the arbitrators, their express or implied agreement to that effect is binding. . . .

"The present inquiry, then, resolves itself to this: Did the parties agree 'by fair implication', to be 'gathered from the submission and attendant facts', that the award should be made by a majority of the arbitrators? . . . The articles of partnership provided that 'Any disputes which may arise shall be submitted to a committee of three parties, one selected by each of the parties to this agreement and a third *disinterested* party selected by the two disputees.' This scheme evidently contemplated that two of the arbitrators would be partisan, and in accordance therewith the parties agreed in writing to submit their disputes to three named persons, one of these being the attorney for plaintiff and the other the attorney for defendant, the decision of this committee to be final. . . . Obviously, all three members of such a committee could not have been expected to agree to an award, it being scarcely conceivable that either attorney would decide adversely

to his client—the submission must have contemplated an award by only **two.**"

So in the instant case the method of choosing the arbitrators implies that the parties contemplated that the decision of the majority would be final. Each of the parties chose one; naturally his selection would be favorable to himself. Furthermore, the fact that the parties agreed that the third was to be an umpire and appointed by the attorneys of both parties indicated, too, that it was contemplated that two of the arbitrators would be partisan and might not concur in the decision which was to be "final, binding and conclusive to all parties hereto, without right of appeal".

Next to be considered is petitioner's over-all question: Is a judgment entered by the prothonotary of this court against a nonresident by virtue of a provision in an arbitration agreement, to wit:

". . . (the) decision or award as may be arrived at, may be entered upon the record by the Clerk or Prothonotary of any Court as a judgment, and the party against whom such decision or award is rendered does hereby authorize and empower the Clerk or Prothonotary of any Court to enter judgment against said party and/or for the sum of such award with costs of suit . . ." where the amount of the judgment does not appear from the face of the instrument authorizing the confession of judgment and there has been no compliance with the Pennsylvania Rules of Civil Procedure, valid?

This raises two inquiries: (1) Does this court have jurisdiction? and (2) is the prothonotary of this court authorized to enter judgment?

Pursuing the first inquiry, it is indisputable that this court has jurisdiction of the subject matter. That it was the intent of the parties, including nonresident defendant, to submit to the jurisdiction of a court of the Commonwealth of Pennsylvania, or elsewhere, is

clear from an examination of the written instrument setting forth the agreement of the parties. No discussion is needed to support the conclusion that no other intent can be drawn from the words used by the parties in the instrument. See Cooper v. Shaver, 101 Pa. 547 (1882). It therefore follows that this court has jurisdiction of both the subject matter and the parties.

Petitioner's contentions regarding the applicability of the Pennsylvania Rules of Civil Procedure are untenable. It is contended that Pa. R. C. P. 2082 ("No judgment shall be entered against a defendant who has not been personally served or who has not appeared as a party in the action until the plaintiff has given the defendant such notice as the court by general rule or special order shall direct") should have been followed, and reliance is put on Webb, etc., et al. v. Link, 70 D. & C. 51 (1949) ; but that was a nonresident motorist case. The rules requiring notice to a nonresident defendant were promulgated for those cases where Pennsylvania by statute allows an action to be brought against a nonresident without personal service. See Goodrich-Amram, Commentary on Pa. R. C. P. 2077($a$). Here there is no adverse action and the arbitration agreement did not contemplate one; if it had, there would have been no need for the agreement which, presumably, was entered into to save money and delay.

We now turn to the inquiry concerning the prothonotary's authority to enter judgment. On this subject it is petitioner's contention that the prothonotary's sole authority to enter judgment is to be found in the Act of February 24, 1806, P. L. 334, 4 Sm. L. 270, sec. 28, 12 PS §739, which provides:

"It shall be the duty of the prothonotary of any court of record, within this Commonwealth, on the application of any person being the original holder

(or assignee of such holder) of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney at law, or other person to confess judgment, to enter judgment against the person or persons who executed the same for the amount, which, from the face of the instrument, may appear to be due, without the agency of an attorney, or declaration filed, with such stay of execution as may be therein mentioned, for the fee of one dollar, to be paid by the defendant; particularly entering on his docket the date and tenor of the instrument of writing, on which the judgment may be founded, which shall have the same force and effect, as if a declaration had been filed, and judgment confessed by an attorney, or judgment obtained in open court, and in term time; and the defendant shall not be compelled to pay any costs, or fee to the plaintiff's attorney, when judgment is entered on any instrument of writing as aforesaid."

In Whitney v. Hopkins, 135 Pa. 246, 253, 254 (1890), it was said:

"The prothonotary of the Court of Common Pleas is merely the clerk of the court. He has no authority, virtute officii, to act as the clerk, agent, or attorney of any person. It is his duty to record upon the minutes of the court all judgments rendered by or confessed before the court whose clerk he is. If he is not personally present, the court may direct any competent bystander to make the entries upon the record; for the legal effect of such entries does not depend upon the person by whom they may be copied or recorded, but upon the jurisdiction of the court whose acts they are. It is also the duty of the prothonotary to enter, by himself or his clerks, on the records of the court, any amicable action entered into in writing, and filed in his office, when the court is not in session. He may also note the confession of judgment in such action by the

defendant. This he does simply as the clerk and keeper of the records of the court in which the parties agree that their action shall be entered: Cook v. Gilbert, 8 S. & R. 567. He has no authority in the premises, and no duty to discharge except to put faithfully into the records of the court what the parties have agreed shall go there. As an individual, he may be authorized to act for another in the same manner that any other person may be; and, when so authorized, his powers are derived from the instrument under which he acts, and not from his office. His commission as prothonotary gives him no right to act as attorney in fact or at law for suitors or others, and imposes no duties except such as grow out of his relations to the court as its clerk. To justify him in acting for suitors, an express authority must be shown, coming either from the person to be affected by his acts, or from an act of the general assembly. By the act of February 24, 1806, it was made the duty of the prothonotary of any court of record within the commonwealth, on the application of the holder, to enter judgment on any note, bond, or other instrument of writing in which judgment is confessed by the maker, or which contains a warrant of attorney for an attorney at law or other person to appear and confess judgment thereon. The act directs that the judgment be entered against the person or persons who executed the instrument, and for the amount which, from the face of the instrument, may appear to be due thereon. If the amount due cannot be ascertained from the face of the instrument, the prothonotary cannot enter judgment upon it, for the Act of 1806 gives him no power to inquire beyond: Connay v. Halstead, 73 Pa. 354."

In Noonan, Inc., v. Hoff, 350 Pa. 295, 298 (1944), it was said:

"There are two methods by which a warrant of attorney to confess judgment may be utilized in order

to accomplish its purpose. One is through the medium of the Act of 1806. In avoiding the necessity of having an attorney appear for the obligor in cases where the amount due appears on the face of the instrument the purpose of that act was to exempt the obligor from the payment of an attorney's fees: Helvete v. Rapp, 7 S&R 306. The second method is that of *defendant himself*, or an authorized attorney on his behalf, confessing judgment; this practice was in use from the earliest times and long before the passage of the Act of 1806." (citing cases) (Italics supplied.)

When the procedure is under the Act of 1806, the amount due must be ascertainable on the face of the instrument, and the prothonotary has no authority to act as a referee or arbitrator to arrive at it: Lansdowne Bank & Trust Co. et al. v. Robinson et al., 303 Pa. 58 (1931). See, also, Schwartz v. Sher, 299 Pa. 423 (1930).

Petitioner argues that prothonotaries may enter judgment only by virtue of this act. This argument makes no allowance for effectuating the acts of the parties to an instrument, as we must here.

In Wall's Administrators v. Fife, 37 Pa. 394 (1860), where an amicable action was entered into the parties agreed that the prothonotary should enter judgment for whatever sum named arbitrators should report. The arbitrators filed their award, and the prothonotary entered judgment thereon. The court said:

"It was . . . competent for them to ascertain, in their own way, what judgment should be entered . . . and what mattered it whether the sum was figured out by themselves, or by persons mutually chosen to do so? The judgment would be equally binding in either case, it being only a different mode of doing the same thing. This agreement is not referable to any statute in terms."

In Gallup v. Reynolds, 8 Watts 424 (1839), it was held that where an award of arbitrators is filed under an agreement whereby the award was to be "final, and upon which execution might issue", it did not require the sanction of the court or any other formality in order to entitle plaintiff to an execution on it.

In that case Chief Justice Gibson said:

"It is asked, . . . to what statute is this species of arbitrament referable? To no statute. It is referable to the agreement of the parties who were a law to themselves. . . . Execution was to issue *immediately*, and consequently without waiting for the reading of the award required by the rule of court, the approval required by the Act of 1705, or the second judgment required by no authority at all."

In Cooper v. Shaver, supra, in construing the clause "I authorize any attorney or prothonotary to enter judgment against me for the within amount" (and deciding it was a sufficient warrant of attorney to confess judgment), the court inferentially recognized the right of the parties to authorize the prothonotary to enter judgment when it said:

"In the instrument signed by Shaver, the meaning of the words: 'I authorize any attorney or prothonotary to enter judgment against me', is determined by the context, keeping in view the laws which define in what courts judgments may be confessed or entered, and what officers may confess or enter them. . . . The word confess is not used, but the *prothonotary is authorized to enter judgment,* which indicates that the attorney shall reach the same end by the proper means in performance of his duty." (Italics supplied.)

In Melnick v. Hamilton et al., 87 Pa. Superior Ct. 575 (1926), it was said:

"The Act of 1806 does not give to the prothonotary the same power which an attorney at law has to confess judgment. It only authorizes him without the

agency of an attorney to enter a judgment in the way specified in the Act. His office gives him no authority to act as attorney in fact or at law for suitors or others, and imposes no duties except such as grow out of his position in the court. *He might be empowered to confess judgment in the instrument in which case he would obtain his authority from the instrument and not from his office.*" (Italics supplied.)

In Noonan, Inc., v. Hoff, supra, it was said, at page 299:

"What the attorneys were authorized to do was to cause a judgment to be entered against defendant and if they instructed the prothonotary to do this in a ministerial capacity they were, in effect, confessing a judgment, and the prothonotary was acting, not independently by virtue of his office and in pursuance of the duty imposed upon him by the Act of 1806, but on behalf of attorneys for defendant authorized to do what defendant could have done himself, namely, cause or procure a judgment to be entered against him; certainly, if he himself had instructed the prothonotary to enter this judgment he would be confessing judgment against himself, and that is just what the attorneys did who appeared for him. . . ."

But, petitioner insists, a strict construction of the instrument shows that the parties did not intend to grant authority to enter judgment on a prothonotary of a court not having jurisdiction of the person. The instrument calls for the entry of judgment by the clerk or prothonotary of *any* court, and the party against whom the decision or award was to be rendered empowered the "clerk or prothonotary of any court to enter judgment against said party and/or for the sum of such award with costs of suit."

Petitioner relies on Grover and Baker Machine Company v. Radcliffe, 137 U.S. 287, and Jackson v. Kentucky River Mills, 65 F. Supp. 601 (1946). In the

Grover and Baker case the prothonotary in Pennsylvania entered judgment under the Act of 1806 on an instrument executed in Maryland, but the warrant gave the power to confess to "any attorney of any court of record in the State of New York, or any other State." Under the facts in that case (instrument executed in Maryland) the obligee was taking advantage of the Pennsylvania statute to exceed the plain terms of the warrant, and the court held that the obligor had a right to insist upon the letter of the authority and should not be bound under the circumstances by the Pennsylvania statute.

In the Jackson case the parties agreed to an arbitration in New York which would be enforcible under and pursuant to the laws of the State, country, or government "having jurisdiction" and that judgment upon the award was to be entered in any court of any such jurisdiction. The court concluded, inevitably, that the provisions of the agreement negatived the idea that the parties "intended to personally submit themselves to the jurisdiction of any court other than one 'having jurisdiction', according to law."

The two foregoing cases, on their facts, differ from the case at hand. In one, an instrument executed in a foreign jurisdiction, contemplated confession by an attorney in any court of record, but it did not contemplate that the function of the attorney would be usurped by the provisions of a special statute (such as 1806) in any of the States where confession might be made. (Cf. Oberlin v. Parry, 287 Pa. 224 (1926).) In the Jackson case the parties by express provision required that the award would be entered as a judgment only where a court had personal jurisdiction of the parties.

In Shure v. Goodimate Co., Inc., 302 Pa. 457 (1931) defendant sought to strike off a judgment entered by any attorney as provided for in the arbitration agree-

ment. Defendant insisted an amicable action should have been entered. It was said, in a per curiam opinion.

"The defendant could have confessed judgment itself and what it could do itself it could authorize its agent to do. In this case it specially authorized any attorney to confess judgment for it. It was not necessary for an amicable action or for an adverse action —the confession was made by an attorney at law. It is presumed that he has a right to appear. . . . The language of the warrant authorizes any attorney to immediately appear for the defendant and confess judgment. It is true this language does not indicate in what forum the attorney is to appear, but since the confession authorized the entry of judgment, the presumption is that the judgment was to be entered in a court having jurisdiction."

Petitioner relies on the Shure case for the proposition that since the empowering clause did not specify the forum "the presumption is that the judgment was to be entered in a court having jurisdiction." Just what the court in the Shure case meant is not clear, but it is likely that, since the warrant of attorney was not territorially restricted, it was referring not to personal jurisdiction but rather to jurisdiction of the subject matter.

Finally, it is to be observed that if the dispute between the parties had been determined on a trial in favor of plaintiff, the prothonotary, in due course, would, as a ministerial act, have entered judgment for him. In the instant case, however, the parties by their writing agreed to submit the issue to arbitration and to authorize the prothonotary to enter judgment in favor of the successful party as a ministerial act.

Reasoning from the above, the conclusion is reached: (1) Defendant may empower the prothonotary to perform a ministerial act, i.e., enter judgment; (2) de-

fendant, speaking for himself, could open a wide field of jurisdiction and authorize the prothonotary of "any" court to enter the amount of the award; (3) a strict construction of the instrument under consideration indicates that defendant petitioner did both.

Petition dismissed.