In the Matter of the Arbitration between REED & MARTIN, INC., d/b/a International Constructors, Appellant-Respondent,

and

WESTINGHOUSE ELECTRIC CORPORATION, Appellee-Petitioner.

No. 316, Docket 34677.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1970.

Decided March 12, 1971.

1270

Donald McL. Davidson, Seattle, Wash. (Ferguson & Burdell, William B. Moore, Seattle, Wash. on the brief), for appellant-respondent.

William Sondericker, New York City (Olwine, Connelly, Chase, O'Donnell & Weyher, Francis H. Dunne, New York City on the brief), for appellee-petitioner.

Before LUMBARD, Chief Judge, FEINBERG, Circuit Judge, and CLARIE, District Judge.*

CLARIE, District Judge:

This is an appeal from a decision and order of the Southern District of New York, 310 F.Supp. 653, confirming an arbitration award in favor of Westinghouse Electric Corporation (Westinghouse), against the appellant, Reed & Martin, Inc. (Reed & Martin), which judgment we affirm.

## FACTS

In July of 1963, Reed & Martin, an Alaskan corporation with its principal place of business in Hawaii, entered into a contract with Westinghouse, a Pennsylvania corporation having its home office in Pittsburgh, with an export division office in New York City. Westinghouse contracted to manufacture and deliver to Reed & Martin certain electrical equipment. The latter was under a prime contract with Ryukyu Electric Power Corporation to construct a power plant in Okinawa. Their agreement contained an arbitration clause which incorporated the Rules of the American Arbitration Association.[1] Article XVI(A) of said contract also contained the provision: "The rights and obligations of the parties under this contract shall be governed in all respects by the laws of the State of Washington, U.S.A."

At the conclusion of the job, a dispute arose between the parties when Reed & Martin had refused to make the final contract payment of $81,457.53. The latter claimed that Westinghouse had not made timely delivery of certain materials and as a result of the delays, it had suffered damages. These issues were first raised by Reed & Martin in a third party action in the United States District Court of Hawaii wherein it was then being sued by the General Electric Corporation. Westinghouse moved for a dismissal, because the contract specifically provided that all such disputes (except one involving a nuclear incident), should be decided by arbitration and the Court granted the motion.

In September, 1967, Westinghouse formally requested arbitration pursuant to the contract and asked that the hearings be held in New York City. At the outset of the matter, the record reflects a proposal by Reed & Martin that it be consolidated with another arbitration case which was already pending in New York City with the Babcock and Wilcox Company, arising out of the same work project. However, such a consolidation could not be carried out except with the consent of all parties; and in letters dated March 5 and March 29, 1968, the

---

* Of the District Court of Connecticut, sitting by designation.

1. "Article XIV—Arbitration

   A. The parties have negotiated this Contract in a spirit of mutual trust and cooperation. Should any disagreement arise out of this Contract after it has been executed, the parties shall seek to resolve such disagreement amicably by making sincere efforts to negotiate a mutually acceptable settlement.

   B. In the event that the parties should reach an impasse after having explored every reasonable avenue toward the settlement of a disagreement (except one involving a nuclear incident), it shall be finally settled under the Arbitration Rules of the American Arbitration Association. As provided in said Rules, each party shall appoint one arbitrator, and the Court of Arbitration shall appoint the third arbitrator. Arbitration proceedings shall be conducted at such time and place as the Court of Arbitration shall decide. Judgment upon an award may be entered in any court of competent jurisdiction. In the event that the matter in dispute is also in dispute between Purchaser and the Owner, then at the request of either party, arbitration shall be deferred until Purchaser has processed the dispute under the disputes clause of contract NR DA 92-328 ENG 655 (which is G.S.A. General Provision, paragraph 6, January, 1958).

   C. Work under this Contract shall continue, if reasonably possible, during any disagreement or arbitration proceedings, and any amount payable to either party under this Contract shall not be withheld on account of such disagreement or proceedings."

Association notified the litigants that New York City would be the hearing locale. Prior to said notice and at all times subsequent thereto, Reed & Martin objected to the New York site in numerous communications to the tribunal administrator, not only because it was inconvenient, but also because it had been improperly designated.

Westinghouse selected as its arbitrator, McDonald Flinn, of the New York law firm of White & Case and Reed & Martin selected George W. Martin, a Seattle, Washington attorney, as its representative. The chairman of the panel, Thomas S. Duff, Jr., was ultimately selected by the arbitration tribunal itself, after the parties' nominees failed to make a selection from the second submitted list. § 14 AAA Rules. Reed & Martin objected to the selection process used in the naming of the third arbitrator (Duff), because his name was drawn from a list consisting exclusively of New York City area residents and it continued to resist that location as the hearing situs.

A pre-trial hearing was held by the panel of arbitrators in New York City on October 4, 1958, to acquaint them with the nature of the dispute and establish rules governing the procedures and issues on which the evidentiary hearing would go forward. These issues of law and fact were determined at this meeting and a ruling issued accordingly. The controversial Ruling No. 2 provided:

"The July 16, 1963 agreement between the parties precludes recovery of damages by Reed & Martin for delay in delivery of the insulators or any other equipment covered by that agreement unless Reed & Martin can prove as required by Article IV-E that such delay was inexcusable and directly resulted in delay in the completion of the plant and that Reed & Martin made corresponding liquidated damage payments to the owner, in which event the damages shall be assessed subject to the limitations set forth in Article IV" (App. 140).

Reed & Martin objected to the aforesaid ruling as eliminating any practical need for any hearing and making the costs of attending such a hearing exceed any possible recovery for Reed & Martin on the remaining issues.

The hearing was held in New York City on February 25, 1969; but the arbitrator designated by Reed & Martin chose not to attend because of other pressing court matters and the appellant offered no evidence. The reasons advanced for this inaction were the pre-trial ruling of October 4, 1968 and the location of the hearing.

The hearing site had in fact been administratively determined by the Arbitration Association's Executive Vice-President, after the parties had failed to agree upon the selection of the impartial arbitrator. His decision was subsequently confirmed by the chairman of the Panel and then ratified by the joint action of two panel members. A transcript copy of the evidentiary hearing was provided for the arbitrator chosen by Reed & Martin and their attorneys and before a decision was reached they were given an opportunity to review it. On May 13, 1969, the Panel awarded Westinghouse $79,819.59 with interest from September 1, 1965, plus administrative costs in the amount of $1,214.27. A dissenting opinion was filed by Reed & Martin's appointee.

After the arbitration panel's work had been concluded, Reed & Martin moved on June 3, 1969, in the State Superior Court of Washington, to set aside the arbitration award under the laws of that State, on the ground that the parties had agreed that the law of the State of Washington would govern the contract. Three days later Westinghouse moved in the United States District Court for the Southern District of New York to confirm the award. Non-resident service of the federal action was effected on respondent in Hawaii on June 10, 1969, giving notice of the court hearing on the motion to be held in New York City on June 24, 1969. On June 13, 1969, Reed & Martin requested a temporary re-

straining order in the State Court of Washington and an order to show cause why Westinghouse should not be enjoined from proceeding in New York. A temporary restraining order issued on June 19, 1969, and the New York proceedings were continued until July 1, 1969. On June 27, 1969, the Washington State Court made a finding that it had concurrent jurisdiction with the district court for the Southern District of New York of both the subject matter and the parties; but "in the proper exercise of judicial restraint and for reasons of comity," it would not interfere with the proceedings pending in the New York court. It dissolved the temporary restraining order and denied Reed & Martin's application for a permanent injunction against the prosecution of the motion, without prejudice to any possible remand.

On January 15, 1970, the district court found that jurisdiction existed in the Southern District of New York and that no impropriety existed in the arbitration proceedings. Pursuant to Rule 9(m) of the General Rules of the United States District Courts for the Southern and Eastern Districts of New York, a subsequent motion to reargue was made and denied on February 10, 1970 and final judgment was entered confirming the arbitration award.

## DISCUSSION OF ISSUES

Reed & Martin challenges the legality of the arbitration process, because it claims a "functionary" acting for the Association wrongfully selected New York as the place for the hearing and the procedures followed were not in conformity with the contract. Article XIV(B) thereof stated that disputes "[S]hall be finally settled under the Arbitration Rules of the American Arbitration Association * * *. Arbitration proceedings shall be conducted at such time and place as the Court of Arbitration shall decide." Section 20 of these Rules provides in part: "The arbitrators shall fix the time and place for each hearing." Reed & Martin argues

that the Court of Arbitration alone may set the site for the hearing and in this respect the action of the Association was ultra vires.

The appellant reads the contract and the Commercial Arbitration rules too narrowly. Section 1 of said Rules provides that the contracting parties shall be deemed to have made all the Commercial Arbitration rules a part of the agreement; and, this same language is substantially reiterated in the contract itself. The fixing of the hearing locale is determined pursuant to Section 10 of said Rules, which provides:

> "FIXING OF LOCALE—The parties may mutually agree on the locale where the arbitration is to be held. If the locale is not designated within seven days from the date of filing the Demand or Submission the AAA shall have power to determine the locale. Its decision shall be final and binding. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice of the request, the locale shall be the one requested."

The Association has the power under these Rules to name the site for the arbitration hearing, after the parties have been given the prescribed time to act and have failed to do so. No claim can be made that the Association abused its discretion in designating New York, since Reed & Martin itself suggested that the present dispute be consolidated with another matter which it already had pending in arbitration with Babcock and Wilcox, Case No. 1310–03355–67, relating to the same construction project as that involved in the present dispute. By letter dated September 18, 1967, Reed & Martin referred to Section 10, when it requested a stay on the choosing of the site to "determine whether consolidation with the other case is appropriate * * *." After being advised that the two matters could not be consolidated, except by mutual consent of all parties or the entry of an appropriate court order, Reed & Martin filed objec-

**1274**

tions to the New York hearing locale; while Westinghouse reiterated its previous request. Confronted with this disagreement, the Association did act pursuant to Section 10 and determined that the hearing situs would be New York City. As the District Court found, a ratification of this choice occurred, if any were needed, when two of the three arbitrators appeared in New York and confirmed the chosen site.

■■■ The appellant resisted the choice of the third arbitrator, claiming that he was illegally foisted on the parties by the Arbitration Association from a list of New York area residents. Having validly determined the site to be New York City, the Association did not exceed its authority in requiring the party-appointed arbitrators to make their choice from qualified lists of New York area residents. Even if the action of the Association were deemed to constitute its own selection of the neutral arbitrator, this would not be an *"ex cathedra* assumption of authority by the Association."* Such action lies within its power under Section 14 of the Rules:

> "If no period of time is specified for appointment of the neutral Arbitrator and the parties do not make the appointment within seven days from the date of the appointment of the last party-appointed Arbitrator, the AAA shall appoint such neutral Arbitrator, who shall act as Chairman."

Ample evidence exists that the parties differed on the selection of the neutral arbitrator and after an inordinate delay, the Association had the authority to submit the list as it did.[2] The letter of the Association dated April 30, 1968, specifically states:

> "Inasmuch as there has been no selection of the neutral Arbitrator from the second list submitted to the Parties on March 29th, we herewith enclose to the party-appointed Arbitrators an additional list for the selection of said neutral Arbitrator. The

Parties will note that said list contains, as did the previous one, persons with a technical, construction and/or engineering background. We are submitting this list in accordance with Section 14 of our Rules and the party-appointed Arbitrators shall have ten (10) days from this date, or until on or before May 10, 1968, within which to return said list" (App. 162).

■■■ The appellant's next claim is that the Panel's pre-trial ruling of October 4, 1968 (App. 140), amounted in substance to a holding that the majority of the Court of Arbitration refused to hear any evidence on behalf of Reed & Martin. The appellant's contention is not valid. The ruling specifically stated that Reed & Martin would be entitled to offer proof that Westinghouse's delay was inexcusable, directly resulting in delay in the completion of the plant and required the payment of liquidated damages by appellant to the owner. This ruling was in accord with the requirements of Article IV-E of the contract.

*"Liquidated Damages.*

> "1. Seller shall pay the Purchaser, as liquidated damages, an amount equal to $200.00 per calendar day of delay in delivery of the subject equipment beyond the scheduled delivery date provided that any such delay results directly in delay in the completion of the plant, and further provided that Purchaser makes corresponding liquidated damages payment to the Owner, except that such delivery date shall be extended for a period equal to the following: * * *.

> "2. The total liability of Seller under the provisions of this Article shall in no event exceed 5% of the total base price of the equipment."

However, Reed & Martin admitted that it had paid no liquidated damages to the owner, for although damages had been assessed, it had obtained a "remission" of them. Rulings 3 and 4 also in-

2. Letters of appellant dated March 14, 1968 (App. 153) and March 26, 1968 (App. 156).

dicated the specific areas in which Reed & Martin would be entitled to present evidence relating to proof of damages. The arbitrators at no time ruled that Reed & Martin could not offer any evidence; but rather they spelled out the relevant areas which required specific proof of damages in keeping with the clear import of the contract. See also, Catz American Co. v. Pearl Grange Fruit Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968): "Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings" (at 553). The hearing afforded the appellant an adequate opportunity to present its legal interpretation of the contract clauses in dispute. We see no indication in the pre-hearing ruling that Reed & Martin was precluded from raising its contention that the literal meaning of the contract did not apply, and if Reed & Martin wished to press this objection, it should have done so at the hearing.

Appellant concludes that its challenge to the arbitration proceedings with the contention that the award must be vacated, because it was rendered by a biased panel of arbitrators. This claim is essentially one made under 9 U.S.C. § 10(b), that the award should be set aside "[w]here there was evident partiality or corruption in the arbitrators * * *." The burden of proof as to this claim, which rests upon the party asserting bias (Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967)), has not been met by appellant.

No evidence has been demonstrated by Reed & Martin which would implicate the neutral arbitrator as being partial to Westinghouse. This arbitrator's duty under Rule 18 was to "disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator." The arbitration award cannot be set aside where an arbitrator has completely followed his obligations under the rules.

The only evidence advanced by the appellant against Mr. Flinn (Westinghouse's appointee) is that his law firm had had dealings with General Electric Company and the latter had been litigating contract clauses identical or similar to those involved in the present case. Mr. Flinn has furnished an affidavit disclaiming any prejudice and denying any business dealings with Westinghouse. His law firm's connection with General Electric has little weight in showing Flinn's bias under the Federal Arbitration Act. In referring to the Commercial Arbitration Rules under similar circumstances, the court in Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 21 (2d Cir. 1962) remarked:

"It is clear at the outset that there was no violation of the Rules in this respect. Sections 11 and 18 of the Rules, in which the only reference to bias is made, refer only to an arbitrator's financial interest in the outcome of a dispute or personal or business relationship with a party, and no claim has been made that any of these conditions existed in this case."

Commonwealth Coatings Corp. v. Continental Gas Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) cited by appellant is not in point. The Court in that case required as a matter of fundamental fairness that an arbitrator disclose his financial dealings with one of the parties before the arbitration commences. This case does not mandate that the arbitrator "provide the parties with his complete and unexpurgated business biography" (concurring opinion of Justice White at 151, 89 S.Ct. at 340) as Reed & Martin is seeking here. There was no evidence of any taint whatsoever concerning any prior business relationship or otherwise on the part of any arbitrator which could be construed to impugn this impartiality.

Reed & Martin's argument that the district court had no jurisdiction to confirm the arbitration award is without merit. The court had diversity jurisdiction due to the citizenship of the

parties, 28 U.S.C. § 1332. Furthermore, it is specifically empowered and enjoined to confirm and enter judgment upon arbitration awards by virtue of the United States Arbitration Act, 9 U.S.C. §§ 1–14. See Ballantine Books, Inc. *supra.* The contract in issue evidences a transaction involving commerce, 9 U.S.C. § 2. The contract specifically provides that "[j]udgment upon an award may be entered in any court of competent jurisdiction." 9 U.S.C. § 9 provides in part:

> "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made."

Since the arbitration was lawfully held in New York City, the District Court in that district had jurisdiction to confirm the award. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, dismissed per stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960) does not indicate otherwise. The case holds specifically that "the rights thus created are to be adjudicated by the federal courts whenever such courts have subject matter jurisdiction, including diversity cases * * *" (271 F.2d at 409).

The appellant maintains, however, that the element of *in personam* jurisdiction is lacking in this situation, where it is a "complete stranger" to the Southern District of New York, and where it has no minimal contracts with the forum. Reliance by Reed & Martin on these constitutional doctrines drawn from Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) is misplaced. Those cases have no bearing on the present case where jurisdiction in the arbitration has been conferred not only by statutory law, but also by individual consent. The comment of the Court in National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) becomes pertinent:

> "And it is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party or even to waive notice altogether" (at 315, 316, 84 S.Ct. at 414).

Consent was manifest here in two distinct ways. Not only did the contract provide that disputes were to be "finally settled under the arbitration rules of the American Arbitration Association," [3] but that "[j]udgment upon an award may be entered in any court of competent jurisdiction." The Arbitration Act provides for a specific means of obtaining personal jurisdiction in the district agreed

---

3. Section 39(b) of the American Arbitration Association's Rules provides:

    "Each party to an agreement which provides for arbitration under these Rules shall be deemed to have consented that any papers, notices or process necessary or proper for the initiation or continuation of an arbitration under these Rules and for any court action in connection therewith or for the entry of judgment on any award made thereun-

der may be served upon such party by mail addressed to such party or his attorney at his last known address or by personal service, within or without the state wherein the arbitration is to be held (whether such party be within or without the United States of America), provided that reasonable opportunity to be heard with regard thereto has been granted such party."

to by the parties,[4] which procedures were followed here. The statute is constitutionally justified in that it implements the power of Congress to regulate contracts of arbitration that deal with interstate commerce. Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

Appellant's contention is not strengthened by Jackson v. Kentucky River Mills, 65 F.Supp. 601 (E.D.Ky.1946), because that case is factually distinguishable. In finding that the court there did not have personal jurisdiction over the defendant and that the defendant did not consent to jurisdiction, the Court was careful to distinguish the situation, where the parties had agreed to arbitrate under the rules of the American Arbitration Association (at 604, citing Mulcahy v. Whitehill, 48 F.Supp. 917 (D.Mass.1943)). The *Jackson* case does not parallel the present one, because the contract of the parties in that matter clearly indicated that the arbitration was to be held at a location different from the jurisdiction for enforcement of the award and hence there was no manifest consent. See also, Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, 243 F.2d 342 (2d Cir. 1957).

Reed & Martin's argument that we should apply Washington state law to decide whether the district court had personal jurisdiction over the appellant, because the agreement provided that its terms would be governed by Washington state law, is frivolous on its face. Since the parties did not agree on a court to which the case would be submitted, we look to the Federal Arbitration Act which, as noted above, confers jurisdiction over Reed & Martin in the Southern District of New York.

Jurisdiction is said to be lacking also, because insufficient time to respond to Westinghouse was afforded Reed & Martin in the District Court. The appellant overlooks the fact that under 9 U.S.C. § 9 this proceeding was instituted by a party applying for an order confirming the award. Under Rule 7(b) (1) Fed.R.Civ.P., an application to the court for an order is to be made by written motion. Under Rule 6(d), Fed. R.Civ.P., the time for the service of such motions is given as "not later than 5 days before the time specified for the hearing * * *." The phrase "in like manner as other process of the court" found in § 9 of the Arbitration Act refers to Fed.R.Civ.P. 4 on the accomplishment of appropriate service, not to Fed. R.Civ.P. 12(a) allowing 60 days for an answer to a summons and complaint.

The notice of motion dated June 6, 1969, was served in Honolulu on June 10, 1969. It gave notice of the hearing of the motion originally scheduled for June 24, 1969, but which was adjourned to July 1, 1969, pending the outcome of the order to show cause returnable in the Superior Court, State of Washington. There was proper service here, as well as actual notice with ample time to respond.

The District Court did not abuse its discretion in refusing to defer to the Washington State Superior Court. Reed & Martin does not claim that any complex issues of Washington substantive law were presented, the arbitration was conducted in New York, and the Washington state court already had decided to defer to the district court. As

---

4. 9 U.S.C. § 9 provides in part:
"Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."

**1278**

the court noted in *Ballantine Books, Inc., supra*:

"Whether or not there might be situations where a state court has proceeded so far in the supervision of an arbitration that it would be an abuse of discretion for the federal court to intrude itself, such a situation is not here presented. Such discretion must be exercised and judged in terms of the practicalities of the situation" (302 F.2d at 20).

The District Court fully considered the appellant's challenges, both as to the validity of the arbitration procedures and its own jurisdiction. Having determined these issues in favor of Westinghouse, the District Court properly confirmed the award.

Affirmed.

