Application to Compel Arbitration Between **BARTELL MEDIA CORPORATION** and Macfadden-Bartell Corporation, Petitioners,

v.

The **FAWCETT PRINTING CORPORATION**, Respondent.

No. 71–Civ. 5475.

United States District Court,
S. D. New York.

Jan. 12, 1972.

London, Buttenwieser & Chalif, New York City, for petitioners; by Francis L. Valente, Jr., New York City, of counsel.

Forsythe, McGovern, Pearson & Nash, New York City, for respondent; by John R. Fawcett, New York City, of counsel.

## MEMORANDUM

CROAKE, District Judge.

This action involves alleged infractions of a commercial contract. Petitioners, Bartell Media Corporation (Media) and Macfadden-Bartell Corporation (Macfadden) apply to this court for an order compelling arbitration, pursuant to 9 U.S.C. § 4. They also seek to enjoin Respondent, The Fawcett Printing Corporation (Fawcett), from proceeding with the prosecution of another action, stemming from the same contract, pending in the United States District Court, Western District of Kentucky, Louisville Division (71 Civ. 7122).

Fawcett is incorporated and has its principal place of business in Louisville, Kentucky. Media and Macfadden are incorporated in Delaware and have their principal place of business in New York. The matter in controversy exceeds the sum of $10,000, exclusive of interest and costs. The court finds diversity jurisdiction. 28 U.S.C. § 1332.

Respondent opposes this motion, asserting: lack of jurisdiction, lack of standing to arbitrate, inapplicability of the Federal Arbitration Act, non-compliance with the Federal Arbitration Act, comity, no irreparable harm demonstrated, and dictates of equity.

The former Macfadden-Bartell Corporation and Fawcett-Haynes Printing Corporation entered into an agreement on March 25, 1965 (Agreement) whereby Fawcett-Haynes agreed to print certain magazines[1] published by Macfadden-Bartell during the period 1968 through 1980. There is no question that the Agreement contains a provision, Article XIII, to settle disputes by arbitration. Article XIII provides, in pertinent part:

> Article XIII. ARBITRATION. Any dispute of fact or other arbitrable matter arising out of or relating to a claimed breach of this Agreement shall be submitted to arbitration.

During June of 1965, Macfadden-Bartell Corporation changed its name to Bartell Media Corporation and a new corporation was organized in Delaware, under the name of Macfadden-Bartell Corporation. It is alleged that the newly organized Macfadden-Bartell Corporation (Macfadden) is a wholly-owned subsidiary for the Bartell Media Corporation, and since June of 1965 has acted as agent for Bartell Media Corporation. In addition, in May of 1970, Fawcett-Haynes changed the name of the corporation to The Fawcett Printing Corporation. In spite of this corporate restructuring the parties continued to deal with one another under the terms of the 1965 agreement.

Respondent asserts that by autumn of 1971 the relationship between the parties had deteriorated when, it is alleged, Petitioners became past due in payments owing under the Agreement, and when Petitioners ceased to turn to Respondents with the printing requirements of Petitioners.

[1]. The magazines include: "True Story," "True Romance," "Photoplay," "T.V. Radio Mirror," "True Experience," "True Love," "Sport," "Saga," "Master Detective," "True Detective," "Silver Screen," "Screenland," "True Confessions," and "Motion Picture."

On November 17, 1971, Macfadden served upon Fawcett a notice to arbitrate by a mailing in accordance with Article XIII of the Agreement. *Cf.* 9 U.S.C. § 4; Fed.R.Civ.P. Rule 5(b). The notice to arbitrate alleged that Fawcett had breached the Agreement by overcharging and by costly inefficiency. After telephone notice, but allegedly before receiving written notice to arbitrate, Fawcett filed a complaint against Macfadden for monies allegedly due under the Agreement in the United States District Court for the Western District of Kentucky, asserting diversity jurisdiction. 28 U.S.C. § 1332. Thereafter, the complaint was amended to include Media and to increase the *ad damnum*. On December 14, 1971, Media sent a notice of arbitration parallel in content to the prior notice by Macfadden, in which Media, as the original party to the Agreement, demanded arbitration pursuant to the Agreement. Respondent has failed to comply with either notice to arbitrate. Thereafter, the instant petition was presented to this court. Notice of this petition and service thereof have been properly made.

■ The actual printing of the magazines in question is accomplished in Louisville, Kentucky. The paper used in printing the magazines is shipped from New Orleans, Louisiana. The type for the magazines is set in Philadelphia, Pennsylvania. The engravings used in the production of the magazines are made in Tennessee. The editorial material for the magazines is prepared, in accord with the Agreement, by Media and Macfadden in New York and sent to Fawcett in Kentucky. In addition, after the magazines are printed they are shipped by Fawcett to nine states, in accord with the contract, whereafter they are distributed throughout the United States. The court finds that the Agreement evidences a transaction involving "commerce." 9 U.S.C. §§ 1, 2.

■ Respondent contends that the agreement to arbitrate with Media does not extend to its alleged subsidiary, Macfadden; therefore, it asserts, Macfadden has no standing to compel arbitration. Whether or not Macfadden has standing, however, Media does have standing and thus the petition is not infirm for the aforesaid reasons. In this context it is to be noted that Article XII [2] of the Agreement allows for assignability of rights without the consent of Fawcett if the concern which takes over from Media demonstrates financial responsibility substantially equivalent to that of Media, and if the concern taking over assumes all of the obligations of Media, pursuant to Article XI [3] of the Agreement. Article XIV [4] of the Agreement expressly binds successors and assignees of Media, the publisher, and Fawcett, the printer.

■ Notwithstanding the provision in the Agreement for arbitration (as quoted above), Respondent would have this court believe that Article XV, providing "This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Kentucky;" forecloses arbitration proceedings: the court does

---

2. Article XII of the Agreement provides, in pertinent part: "Neither Printer nor Publisher shall assign any right or liability hereunder without the consent of the other except as provided in Article XI hereof. . . . ."

3. Article XI of the Agreement provides in pertinent part: "The Publisher may at any time during the terms of this Agreement sell or otherwise dispose of any of Publisher's Publications to a person, firm or corporation if (i) such person, firm or corporation shall be of substantially equivalent financial responsibility as Publisher and shall be otherwise reasonably qualified to publish the Publisher's Publication or Publications so sold or disposed of and (ii) such other person, firm, or corporation shall concurrently assume all of the obligations of Publisher hereunder in respect thereto."

4. Article XIV of the Agreement provides in pertinent part: "Subject to the express provisions to the contrary herein contained, this Agreement shall extend to and bind Printer and Publisher and their respective successors and subject to Article XII assigns."

not agree. The choice of law of the parties to the Agreement is relative, if at all, as to whether a particular matter is arbitrable under the terms of the agreement.

As to controversies which may be arbitrated, the Kentucky statutes state, in pertinent part:

Any controversy which is or might be the subject of an action may, at the request of those interested therein, be submitted to the decision of one or more arbitrators, or to two and their umpire, by the order of any court having jurisdiction of the subject. Ky. Rev.Stat. ch. 417, § 417.011 (1962). *See also*, Notes and Annotations to the Kentucky Revised Statutes (Supps. 1962, 1960), Legislative Research Commission.

■ The matters in dispute involve allegations of overcharging and costly inefficiency, both of which clearly qualify as matters for arbitration under the Agreement and pursuant to Kentucky law.

■ In any event, Federal policy in favor of arbitration must prevail over state policy in the area carved out by the Federal Arbitration Act. Prima Paint Corp. v. Flood and Conklin Mfg. Co., 360 F.2d 315, 317, 318 (2d Cir. 1966), aff'd 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Necchi v. Necchi Sewing Machine Sales Corp., 348 F. 2d 693, 696 (2d Cir.1965) (Marshall, J.), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966); Metro Industrial Painting Corp. v. Terminal Construction, 287 F.2d 382, 385–387 (2d Cir.), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961). American Airlines, Inc. v. Louisville & Jefferson County Air Board, 269 F.2d 811 (6th Cir.1959); Lawn v. Franklin, 328 F.Supp. 791 (S. D.N.Y.1971); *cf.* Gatliff Coal Co. v. Cox, 142 F.2d 876, upon which respondent relies, with Jackson v. Kentucky River Mills, 65 F.Supp. 601, 603 (E.D.Ky. 1946), aff'd, Kentucky River Mills v. Jackson, 206 F.2d 111 (6th Cir.1953),

cert. denied, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953).

". . . [t]he Arbitration Act in making agreements to arbitrate 'valid, irrevocable, and enforceable' [9 U.S.C. § 2] created national substantive law clearly constitutional . . . . [t]he rights thus created are to be adjudicated by the federal courts whenever such courts have subject matter jurisdiction, including diversity cases . . . . We hold that the body of law thus created . . . encompasses questions of interpretation and construction as well as questions of validity, revocability and enforceability of arbitration agreements . . since these two types of legal questions are inextricably intertwined." Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 409 (2d Cir.1959) (Medina, J.), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L. Ed.2d 37 (1960).

■ As to the other sought-for relief, the court distinguishes this petition, brought to compel arbitration of issues concerning overcharging and costly inefficiency, from the action alleging default on payments brought by Respondent and presently before another district court. In the interests of comity and sound judicial administration this court will not interfere with an action brought in another federal court in the absence of compelling circumstances; such circumstances are not herein demonstrated. Mann Mfg. Inc. v. Hortex, Inc., 439 F.2d 403 (5th Cir.1971); 14A Cyclopedia of Federal Practice (3d ed. § 73.145). Furthermore, the Federal Arbitration Act states that whether a stay should be granted in an action involving an arbitrable issue is to be determined in "the court in which such suit is pending," 9 U.S.C. § 3. Media, and perhaps Macfadden, still has the opportunity of applying to the federal court in the Western District of Kentucky for a stay of the pending proceeding before that court.

■ The disposition of the matter before this court will not necessarily re-

solve the issues involved in the District of Kentucky court. Denial of an application to stay a pending suit, pursuant to 9 U.S.C. § 3, is not inconsistent with granting a petition to compel arbitration under 9 U.S.C. § 4. In re Pahlberg Petition, 131 F.2d 968 (2d Cir.1942); Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2d Cir.1942); Petition of American Locomotive Co., 87 F.Supp. 754 (D.Mich.1949), aff'd, 185 F.2d 316 (1950).

Accordingly, the parties are directed to proceed to arbitration in accordance with the terms of the Agreement, pursuant to the Federal Arbitration Act. All other relief sought by this motion is denied.

So ordered.